*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0082p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

GERARDO VILLAGARCIA,

        *Petitioner-Appellee,*

    *v.*

WARDEN, NOBLE CORRECTIONAL
INSTITUTION,

        *Respondent-Appellant.*

No. 07-3619

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 05-00810—Gregory L. Frost, District Judge.

Argued: April 30, 2009

Decided and Filed: March 25, 2010

Before: MARTIN, SUHRHEINRICH, and WHITE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Diane Mallory, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Noel J. Francisco, JONES DAY, Washington, D.C., for Appellee. **ON BRIEF:** Diane Mallory, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Noel J. Francisco, David J. Strandness, JONES DAY, Washington, D.C., for Appellee. Gerardo Villagarcia, Caldwell, Ohio, pro se.

_____

## OPINION

_____

HELENE N. WHITE, Circuit Judge. Respondent-Appellant, the Warden of Noble Correctional Institution ("Warden"), appeals a district court judgment granting Petitioner-Appellee Gerardo Villagarcia's petition for a writ of habeas corpus under 28 U.S.C. § 2254. We AFFIRM.

After an Ohio state-court jury convicted Villagarcia of child endangerment and felonious assault, the trial court sentenced him to two seven-year terms and one four-year term of imprisonment, to be served concurrently. Villagarcia exhausted his state-court remedies, and then brought this petition for habeas corpus, challenging his sentence as unconstitutional because it was enhanced beyond the statutory maximum by judicial fact-finding in violation of the United States Supreme Court decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004). The district court granted his petition and ordered the State of Ohio to vacate his sentence or resentence him within 90 days. The district court's order was stayed pending appeal.

## I

In 2002, Villagarcia was charged in Ohio state court with one count of child endangering in violation of Ohio Rev. Code Ann. § 2919.22(B)(1),[1] one count of child endangering in violation of § 2919.22(A),[2] and one count of felonious assault in violation of § 2903.11(A)(1).[3] The charges stemmed from injuries suffered by five-month-old Madison Fredritz, the daughter of Villagarcia's roommate/girlfriend. Villagarcia pleaded not guilty to all charges, and the case proceeded to jury trial.

At trial, witnesses presented testimony concerning the care and behavior of Madison on September 21, 2005, the day she was injured. That day, Madison was in the care of her mother, Trish Fredritz, and Villagarcia. At 4:30 p.m., Villagarcia fed Madison a bottle, and shortly after, at 5:00 p.m., Trish left for work, leaving Madison in the care of Villagarcia. Madison slept in her cradle for several hours, and, at 8:30 p.m., Villagarcia woke her to feed her another bottle. Madison began to cry, and Villagarcia saw that she was having difficulty breathing. He said that it seemed as though "she was running out of breath, she wasn't breathing well," so he "picked her up" and "sh[ook] her a little bit so that she could respond." Villagarcia denied hitting Madison, although he testified that her head was rattling

---

[1] Section 2919.22(B)(1) provides that no person shall abuse a child under eighteen years of age.

[2] Section 2919.22(A) states that "[n]o person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age . . . shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. . . ."

[3] Section 2903.11(A)(1) states that "[n]o person shall knowingly . . . (1) [c]ause serious physical harm to another or to another's unborn."

while he shook her. Ten to fifteen minutes later, Villagarcia called Trish. At this point, Madison was not crying or responding, and was almost fainting. Villagarcia explained that he did not call 911 because he does not speak English.

When Trish returned home, she found Madison was limp, pale, and unresponsive, and she called 911. Madison was taken by ambulance to the hospital, and ultimately had to be placed on life support. X-rays revealed that Madison's skull was fractured and that she had suffered a sub-dural hematoma.

Two days later, Dr. Mary Ranee Leder, a doctor who specializes in child abuse, examined Madison and interviewed Trish at the hospital. At trial, Dr. Leder described Madison's head injuries as severe, and testified that such injuries are typically caused by an impact or severe force, and can occur in severe motor vehicle accidents, where a baby falls from a substantial height, or where a baby is vigorously shaken. Dr. Leder testified that it was her belief that Madison's injuries were the result of shaken-baby syndrome and that the only plausible cause was vigorous shaking with impact, the type that a reasonable observer would realize is dangerous. In addition, Dr. Leder testified that Madison's skull fracture was recent because no healing of the fracture was evident. Based on the x-rays, she estimated the injury occurred "within a week, possibly within three days" of Madison's admittance to the hospital. The "clinical information" Dr. Leder received after interviewing Trish (i.e., that the child appeared well until at least 5:00 that day) led her to conclude that Madison was injured "sometime between the time she was last noted to be well and before she was noted to be clearly abnormal." Dr. Leder explained that by "not well," she meant "problems breathing," being "floppy," "limp," and looking pale.

On February 6, 2003, the jury convicted Villagarcia of all charges. Felonious assault and child endangerment resulting in serious physical harm, in violation of § 2919.22(B)(1), are both second-degree felonies; child endangerment resulting in serious physical harm, under § 2919.22(A), is a third-degree felony. On March 21, 2003, the trial court sentenced Villagarcia to seven years' imprisonment for each second-degree felony, and one four-year term for the third-degree felony, to be served concurrently.

Ohio Rev. Code Ann. § 2929.14(A)(2) states that "for a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years." For a third-degree

felony, "the prison term shall be one, two, three, four, or five years." Ohio Rev. Code Ann. § 2929.14(A)(3). The statute further provides that if the offender previously has not served a prison term,[4] the "court *shall* impose the shortest prison term authorized for the offense . . . unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." Ohio Rev. Code Ann. § 2919.14(B) (2003) (emphasis added). When Villagarcia was first sentenced, the trial court made no supplemental finding regarding the adequacy of a two-year sentence, notwithstanding that it imposed seven-year sentences.

Villagarcia challenged his sentence in a direct appeal, arguing that the trial court had failed to make the requisite findings before imposing a sentence over two years. The Ohio Court of Appeals agreed, and remanded for resentencing after finding that the "trial court erred when it sentenced [Villagarcia] by failing to make required statutory findings." On September 17, 2004, the trial court resentenced Villagarcia to the same seven-year sentences after stating that a minimum sentence would demean the seriousness of the offense.

One year later, on September 15, 2005, Villagarcia filed a *pro se* motion for leave to file a delayed appeal. Villagarcia asserted that he was not informed of his right to appeal his sentences, and that his sentences deprived him of his "Sixth Amendment right[] to have a jury determine the necessary elements for the court to impose more than the minimum prison term." The Ohio Court of Appeals denied Villagarcia's motion on October 27, 2005, finding that he had not provided "sufficient justification for [his] failure to perfect a timely appeal," and that his sentences did not violate the Supreme Court decisions in *Apprendi*, 530 U.S. 466, and *Blakely*, 542 U.S. 296. Villagarcia filed a timely appeal with the Supreme Court of Ohio, which was denied.

Villagarcia's federal habeas petition was filed on September 1, 2005. In an order dated March 30, 2007, the district court granted his petition on the ground that his sentences violated *Blakely*, and ordered the State of Ohio "to vacate [his] sentence and release [him] unless it resentences him within ninety (90) days." *Villagarcia v. Warden, Noble Correctional Inst.,* No. 2:05-cv-810, 2007 WL 1028528 (S.D. Ohio Mar. 30, 2007)

---

[4]*See* § 2919.14(B)(1). It is undisputed that Villagarcia had not previously served a prison term.

(unreported).  The district court stayed the judgment pending appeal, and the Warden's appeal to this court followed.

**II**

**A**

This court reviews a district court's legal conclusions in a habeas corpus proceeding *de novo*.  *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999).  However, this court reviews state trial and appellate court decisions under the standard set forth in 28 U.S.C. § 2254(d), which was amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  28 U.S.C. § 2254 states in pertinent part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . .

This court has explained that "[t]he statute means what it says." *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003).  "What the statute says, to repeat, is that habeas relief may not be granted unless the state court's decision was either 'contrary to . . . clearly established federal law, as determined by the Supreme Court of the United States,' or 'involved an unreasonable application of . . . [such] law.'" *Id*.  To justify a grant of habeas relief under the "contrary to" clause, "a federal court must find a violation of law 'clearly established' by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision." *Miller v. Francis,* 269 F.3d 609, 614 (6th Cir. 2001).  The "contrary to" clause is satisfied "if the state court arrive[d] at a conclusion opposite to that reached by [the U.S. Supreme] Court on a question of law or if the state court decide[d] a case differently than [the U.S. Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Interpreting the "unreasonable application" clause, the Supreme Court noted that

> Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect." Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Williams*, 529 U.S. at 411. This court has interpreted the "unreasonable application" clause to mean that even if this court "believe[s] that a state court incorrectly applied federal law, [it] must refuse to issue the writ of habeas corpus if [it] finds that the state court's decision was a reasonable one." *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000) (quoting *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000)).

**B**

Villagarcia contends that he is entitled to federal habeas relief because the Ohio Court of Appeals decision rejecting his Sixth and Fourteenth Amendment claims is contrary to or an unreasonable application of *Apprendi* and *Blakely*. Although Villagarcia was convicted and originally sentenced in 2003, before the decision in *Blakely*, he was resentenced in September 2004, two months after the *Blakely* decision was issued on June 24 of that year.

In *Apprendi*, the defendant pleaded guilty of possession of a firearm for an unlawful purpose, an offense that carries a prison term of 5 to 10 years. At sentencing, however, the state trial court concluded that Apprendi's conduct could be considered a racially-motivated "hate crime" and imposed a 12 year sentence.[5] The Supreme Court invalidated Apprendi's sentence, holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

In *Blakely*, the defendant pleaded guilty of second-degree kidnaping involving domestic violence and use of a firearm, a class B felony. In Washington, state law provided

---

[5] Apprendi "fired several .22-caliber bullets into the home of an African-American family that had recently moved into a previously all-white neighborhood in Vineland, New Jersey." *Apprendi*, 530 U.S. at 469. After his arrest, Apprendi made a statement (which he later retracted) that "because they are black in color he does not want them in [his] neighborhood." *Id.*

that "[n]o person convicted of a [class B] felony shall be punished by confinement . . . exceeding . . . a term of ten years." *Blakely,* 542 U.S. at 299 (quoting Wash. Rev. Code § 9A.20.021(1)(b)). Other provisions of state law, however, further limited the range of sentences available, and specified a "standard range" of 49 to 53 months for second-degree kidnaping with a firearm. *Blakely,* 542 U.S. at 299. The statute further explained that a judge could impose a sentence above the standard range after finding "substantial and compelling reasons justifying an exceptional sentence." *Id.* (citing Wash. Rev. Code § 9.94A.120(2)). Pursuant to the plea agreement, the state recommended a sentence within the standard range of 49 to 53 months, but after hearing Blakely's wife describe her kidnaping, the judge sentenced Blakely to 90 months on the ground that he had acted with "deliberate cruelty," a statutorily enumerated ground for departure in domestic-violence cases. 542 U.S. at 300. The Supreme Court invalidated Blakely's sentence, stating:

> [T]he "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

542 U.S. at 304 (citations omitted) (emphasis in original).

## C

In its Memorandum Decision denying Villagarcia's motion for leave to file a delayed appeal, dated October 27, 2005, the Ohio Court of Appeals rejected Villagarcia's *Blakely* argument, finding that his "statutory maximum" sentence was between two and eight years, and thus, that his sentence of seven years did not run afoul of *Blakely* and *Apprendi*:

> . . . Ohio's sentencing scheme does not encroach upon the traditional and constitutionally required role of the jury in finding those facts that fix the upper limit of a defendant's punishment for a particular offense. Rather, the upper limit, or in *Blakely* terms, the "statutory maximum" sentence to which one accused of a felony knows he will be exposed upon walking through the courtroom door, is established by statute. R.C. 2929.14(B) does not allow judge-made findings to enhance a defendant's punishment beyond

the maximum sentence corresponding to the class of offense of which he is convicted or to which he pleads guilty . . . .

In the present case, the jury verdict authorized the trial court to impose a sentence ranging from one to five years on the third degree felony count of child endangering and a sentence ranging from two to eight years on the remaining second degree felonies of which appellant was convicted. The trial court imposed a period of incarceration on each count which was below the "statutory maximum" for *Apprendi* purposes. Thus, [Villagarcia's] sentence did not run afoul of *Blakely* and *Apprendi*.

*State v. Villa-Garcia*, No. 05AP-997 (Ohio Ct. App., Nov. 28, 2005).

Four months later, the Ohio Supreme Court, in *State v. Foster*, 845 N.E.2d 470 (Ohio 2006), held the sentencing scheme under which Villagarcia was sentenced unconstitutional and overturned the approach taken by the Court of Appeals in denying Villagarcia's sentencing appeal:

Most Ohio appellate courts have determined that *Blakely* is inapplicable. They have distinguished Ohio's plan from Washington's grid system, or emphasized a sentencing court's inability to exceed a statutory range through fact-finding, or characterized required findings as traditional sentencing factors, or read the "prior conviction" exception to *Apprendi* broadly to uphold the challenged sentences . . . . Nevertheless and unfortunately, *Blakely* is misunderstood if it is seen as inapplicable to Ohio.

845 N.E.2d at 488.

**D**

We agree with the Ohio Supreme Court's ultimate conclusion, and we also find that the Ohio Court of Appeals decision that Villagarcia's sentence "did not run afoul of *Blakely* and *Apprendi*" is contrary to, and an unreasonable application of, *Blakely*.[6] When the trial court initially sentenced Villagarcia to seven-year terms, the Ohio Court of Appeals recognized that additional findings of fact beyond those found by the jury were necessary

---

[6]We observe that the instant case presents the unusual fact situation wherein the Ohio Supreme Court has itself concluded that the analysis employed by the Ohio Court of Appeals in rejecting Villagarcia's claim is contrary to and demonstrates a misunderstanding of *Blakely*. The Ohio Supreme Court observed that the "Supreme Court of the United States has repeated its holding that '[if] a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact – *no matter how the State labels it* – must be found by a jury beyond a reasonable doubt.'" *Foster*, 845 N.E.2d at 489 (quoting *Ring v. Arizona,* 536 U.S. 584, 602 (2002), citing *Apprendi*, 530 U.S. at 482-83) (emphasis in original).

before the trial court could impose a sentence in excess of two years; it ordered the trial court to resentence Villagarcia. Thus, it is undisputed that the facts contained in Villagarcia's jury verdict were insufficient to sentence him to a seven-year term of imprisonment, and that judicial fact-finding was the predicate for extending his sentence beyond the statutorily prescribed two years.

The Warden argues that "the judicial findings required by Ohio's sentencing statutes reflect considerations that were traditionally left to the sentencing judge," and claims that "those findings are more aptly described as conclusions about the appropriateness of a particular penalty for an offender given the goals of felony sentencing." The Warden asserts that "[j]uries simply do not have the cumulative experience and knowledge necessary to make informed determinations related to the seriousness of an offense or the impact of a sentence on the protection of the public from future crimes."

However, in *Apprendi*, the Supreme Court expressly rejected such a distinction, stating that "the relevant inquiry is not one of form, but of effect – does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi*, 530 U.S. at 494. The rule in *Blakely* is clearly set forth, and states that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 542 U.S. at 303 (emphasis in original). Applying *Blakely*, the Ohio Court of Appeals concluded that Villagarcia's statutory maximum was two to eight years. This conclusion was both contrary to and an unreasonable application of clearly established federal law. In *Blakely*, a statute provided that the maximum penalty for a class B felony is ten years. Nevertheless, the Supreme Court focused on the "standard range" prescribed by another sentencing statute, which permitted departure from that range only upon a judicial finding of certain additional facts. 542 U.S. at 303-04. The Ohio provision at issue operates in the same manner. The statutory maximum is limited by another provision that sets a lower maximum from which the court can depart only upon a finding of additional facts.

We thus affirm the district court's conclusion that Villagarcia has shown that the state court's decision involved an unreasonable application of clearly established federal law and satisfied the AEDPA standard.

## III

### A

Having found that Villagarcia's sentence violates *Blakely* and *Apprendi*, we must next consider whether the constitutional error was harmless. Habeas relief is only appropriate if the constitutional error harmed the petitioner. *See Jensen v. Romanowski*, 590 F.3d 373, 378 (6th Cir. 2009). "Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error," and accordingly, such error is subject to harmless error analysis. *Washington v. Recuenco*, 548 U.S. 212, 221 (2006). There is no case directly on point in our circuit or from the Supreme Court applying the harmless error standard to collateral review of a sentencing error.

The Supreme Court has explained that in cases involving review of a state-court criminal judgment under 28 U.S.C. § 2254, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). *Fry* adopted *Brecht*'s more "state-friendly standard" for cases involving collateral review of state-court decisions. *Hereford v. Warren*, 536 F.3d 523, 532-33 (6th Cir. 2008). Under *Fry*, an error is considered not harmless when "the matter is so evenly balanced that the habeas court has grave doubt as to the harmlessness of the error." *Id.* at 533; *Patterson v. Haskins*, 316 F.3d 596, 609 (6th Cir. 2003).[7]

---

[7]In cases involving direct review of federal sentences, federal courts use a more lenient harmless error standard, and this Court has explained that "[u]nder the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless – i.e.[,] any such error 'did not affect the district court's selection of the sentence imposed.'" *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)).

In another federal sentencing case, *United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005), a defendant was sentenced under the then-mandatory United States Sentencing Guidelines to a midrange sentence within his guidelines range. While his appeal was pending, the Supreme Court issued its decision in *United States v. Booker*, 543 U.S. 220 (2005), establishing that the sentencing guidelines are advisory. This court addressed whether the sentencing error (treating the guidelines as mandatory rather than advisory) affected Barnett's substantial rights, and noted that "it would be exceedingly difficult for a defendant, such as Barnett, to show that his sentence would have been different if the district court had sentenced him under the advisory, rather than the mandatory, Guidelines framework." *Barnett*, 398 U.S. at 528. This court further explained that it had "deep concern with speculating" how the district court would have sentenced the defendant under a different standard. *Id. Booker* changed federal sentencing from a narrow, mechanical process to one where the district court has a great deal of discretion, and in the face of that change, the *Barnett* court found that it could not conclude that a *Booker* error was harmless because it was impossible to know what the district court would do when freed from the constraints of the Sentencing Guidelines and confronted with different arguments and different evidence. *Id.* at 529.

**B**

In *Foster*, the Ohio Supreme court followed the approach taken in *Booker* and severed the "*Blakely*-offending portions" of Ohio's felony-sentencing statutes, i.e., those provisions that "either create presumptive minimum or concurrent terms or require judicial fact-finding to overcome the presumption." *Foster*, 845 N.E.2d at 496-97. This remedy left Ohio sentencing judges with full authority to sentence within the statutory range without making findings justifying sentences in excess of the minimum. But rather than simply conclude that the sentencing judges in the cases before it would impose the same sentences when unconstrained by the severed portions of the statutes, the Ohio Supreme Court remanded for resentencing in all but one case. This is consistent with our decision in *Barnett*. *See* n.7, *supra*. Recognizing that the standard here is more deferential to the state than in *Barnett*, we nevertheless conclude that the constitutional error is not harmless.

The Warden argues that Villagarcia's sentencing judge, who sentenced him twice to the same seven-year sentence, would undoubtedly impose the same sentence on remand. This argument is not without force. However, the very provision relied on by the sentencing judge has been found unconstitutional and was severed by *Foster*. Ohio Rev. Code Ann. § 2929.14(B); *see* p. 4, *supra*. Under the prior sentencing scheme, the sentencing judge was obliged to start with a two-year sentence and then increase the sentence after considering whether Villagarcia was serving a prison term at the time of the offense or previously served a prison term – he was not and had not – and whether the two-year term would demean the seriousness of Villagarcia's conduct or would not adequately protect the public from future crime by Villagarcia or others. Under the post-*Foster* sentencing scheme, although the court is free to sentence to any term within the statutory maximum of eight years without making judicial findings, it also is not constrained to follow the formula previously dictated by the severed provision.

The non-severed provisions of Ohio's sentencing statutes outline a number of considerations for judges to evaluate when sentencing defendants. Ohio Rev. Code Ann. § 2929.11(A) states that the "overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender," and that "[t]o achieve those purposes, the sentencing court shall consider the need for incapacitating

the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." Section 2929.11(B) states that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing . . . , commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

Section 2929.12(A) provides:

> *Unless otherwise required by section* 2929.13 or *2929.14 of the Revised Code*, a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code. In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism and, in addition, *may consider any other factors that are relevant to achieving those purposes and principles of sentencing.*

Emphasis added.[8]

---

[8]The remainder of § 2929.12 provides:

(B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:

(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
(6) The offender's relationship with the victim facilitated the offense.
(7) The offender committed the offense for hire or as a part of an organized criminal activity.
(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.

Because § 2929.14(B) has been severed as unconstitutional, it no longer operates as a limit on the sentencing court's discretion. Instead, the statutes direct the court to consider the factors set forth in §§ 2929.12(B)(C)(D) and (E), and allow consideration of any other factors relevant to achieving the stated purposes and principles of sentencing. Some of the factors (such as whether the defendant has a criminal history, has "led a law-abiding life for a significant number of years," and whether "the offense was committed under circumstances not likely to recur") weigh in Villagarcia's favor, while others (whether the defendant's relationship with the victim "facilitated the offense," and whether the victim "suffered serious physical . . . harm") do not. Ohio Rev. Code Ann. § 2929.12(B), (E). In any event,

---

(C) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:
(1) The victim induced or facilitated the offense.
(2) In committing the offense, the offender acted under strong provocation.
(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.

(D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:
(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense pursuant to division (B) of section 2967.16 or section 2929.141 of the Revised Code.
(2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has a history of criminal convictions.
(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
(5) The offender shows no genuine remorse for the offense.

(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:
(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.
(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.
(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
(4) The offense was committed under circumstances not likely to recur.
(5) The offender shows genuine remorse for the offense.

we simply cannot know whether the sentencing judge would accord the relevant factors the same weight when reassessing the matter outside the dictates of the severed provisions.

We AFFIRM the district court's conditional grant of Villagarcia's habeas petition.