NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0611n.06

No. 09-3533

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| EUGENE ROBERT ANDERSON, | ) | |
| | ) | |
| **Petitioner-Appellee,** | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| REGINALD WILKINSON, | ) | UNITED STATES DISTRICT |
| DIRECTOR, | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| **Respondent-Appellant**, | ) | |
| | ) | |
| OHIO REHABILITATION & | ) | **O P I N I O N** |
| CORRECTION DEPT.; THOMAS | ) | |
| McBRIDE, WARDEN; MOUNT | ) | |
| OLIVE CORRECTIONAL CENTER, | ) | |
| | ) | |
| **Respondents.** | ) | |
| | ) | |

Before: GUY, MOORE, and GRIFFIN, Circuit Judges.

KAREN NELSON MOORE, Circuit Judge. Petitioner-Appellee Eugene Robert Anderson filed a petition for a writ of habeas corpus in the U.S. District Court for the Southern District of Ohio, arguing that the sentences he received pursuant to a criminal conviction in Ohio state court violated *Blakely v. Washington*, 542 U.S. 296 (2004). The district court granted his petition on the grounds that Anderson received several non-minimum, maximum, and consecutive sentences, all of which required the state trial court to resolve factual questions not submitted to a jury. The State of Ohio now appeals, arguing that Anderson's sentences do not violate *Blakely*, and that, even if they

did, any error with respect to the non-minimum, non-maximum sentences was harmless. For the reasons stated below, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

**A. Ohio's Prior and Current Sentencing Regimes**

Prior to July 1, 1996, Ohio had an indeterminate sentencing regime under which trial judges would set a minimum and maximum prison sentence, and a parole board would determine the actual release date. *See State v. Foster*, 845 N.E.2d 470, 484 (Ohio), *cert. denied*, 549 U.S. 979 (2006). There were, however, certain exceptions. In particular, under the pre-1996 sentencing framework, any defendant convicted of a third-degree felony could be sentenced to a term of only "one, one and one-half, or two years." Ohio Rev. Code § 2929.11(D)(1) (1996). If the defendant previously committed a crime of violence, inflicted "physical harm," or threatened to inflict "physical harm" with a "deadly weapon," however, then an indeterminate sentence of two to ten, two and one-half to ten, three to ten, or four to ten years was required. *Id.* § 2929.11(D), (B)(6).

In 1996, Ohio opted instead for a determinate sentencing regime which worked as follows. The sentence the trial court imposed depended upon the "degree" of the felony. For each degree, the sentencing range from which a trial judge could select was determined by statute. For instance, if a defendant was convicted of a third-degree felony, the trial judge could sentence that defendant to a term of "one, two, three, four, or five years." Ohio Rev. Code § 2929.14(A)(3) (2003). The trial judge's discretion was limited, however, even within the prescribed sentencing range. In particular, if the defendant was not serving and had never served a term of imprisonment, the trial judge was

2

required to impose "the shortest prison term authorized for the offense" (a minimum sentence), *id.* at § 2929.14(B), unless it found "on the record that the shortest prison term [would] demean the seriousness of the offender's conduct or [would] not adequately protect the public from future crime by the offender or others." *Id.* § 2929.14(B)(2). Furthermore, if the trial judge wished to "impose the longest prison term authorized for the offense," (a maximum sentence), it generally had to find that the defendant "committed the worst form[] of the offense," or "pose[d] the greatest likelihood of committing future crimes." *Id.* § 2929.14(C). Finally, a trial judge was also required to make certain findings in order to impose consecutive sentences. *Id.* § 2929.14(E)(4).

In 2006, however, the Supreme Court of Ohio found § 2929.14(B), § 2929.14(C), and § 2929.14(E)(4) to be in violation of *Blakely*. *See Foster*, 845 N.E.2d at 494. In the remedial portion of its opinion, the court chose to sever these provisions. *Id.* at 496–99. As a result, trial judges in Ohio now have broad discretion and may select any sentence within the range prescribed under § 2929.14(A).

## B. Facts with Respect to Anderson

### 1. Conviction and Sentencing

In 2002, Anderson was convicted of three counts of pandering obscenity involving a minor, thirty-six counts of pandering sexually oriented matter involving a minor, twenty counts of complicity in pandering sexually oriented matter involving a minor, fourteen counts of illegally using a minor in nudity-oriented materials, twenty-eight counts of complicity in illegally using a minor in nudity-oriented material, one count of using property without authorization, one count of corrupting

3

a minor, and five counts of promoting prostitution. At the sentencing hearing, the trial judge imposed a sentence for each of the individual counts. The post-1996 sentencing regime governed all of Anderson's convictions except for the corrupting-a-minor conviction and one of the promoting-prostitution convictions, both of which fell under the pre-1996 framework. Anderson's combined prison sentence was seventy-five years and four months along with a consecutive indeterminate sentence of two to ten years (for the corrupting-a-minor conviction) and another consecutive indeterminate sentence of two to fifteen years (for the promoting-prostitution conviction).

It is unnecessary here to detail the specific sentence that the trial court assigned to each of Anderson's convictions. There are a few key points to note, however. First, every individual sentence imposed under the post-1996 sentencing regime exceeded the minimum prescribed under § 2929.14(A) and several constituted the maximum allowed. Furthermore, numerous sentences were imposed consecutive to one another. Finally, the corrupting-a-minor offense for which Anderson was convicted was a third-degree felony, meaning the two-to-ten-year sentence he received under the pre-1996 sentencing regime exceeded the presumptive range.

Therefore, the trial court was required to make certain factual findings, which it proceeded to do after announcing the sentence. First, the trial judge determined that, with respect to all the convictions in the record, minimum sentences "would not be adequate to protect the public nor to punish this offender." Dist. Ct. Dkt. ("Doc.") 6-6 at 40 (Sent. Order at 17). This finding was based upon the number of victims, the characteristics of those victims, the duration of Anderson's conduct,

4

the methods Anderson employed to lure his victims, the size and nature of Anderson's pornography collection, the physical and psychological harm the victims suffered, and the fact that Anderson knew he was supporting the pornography industry.

With respect to the counts for which the trial court imposed a maximum sentence, the trial court found that Anderson committed the "worst forms of the offense." *Id.* at 42-44 (Sent. Order at 19-21). The court further determined that Anderson "pose[d] the greatest likelihood of recidivism" given his "long term interest in juvenile pornography" and his "long-term involvement with multiple victims in the crimes involving sexual contact with victims." *Id.* at 44 (Sent. Order at 21). In making its "likelihood of recidivism" finding, the court also incorporated by reference the findings it made in its earlier determination that Anderson was a "Sexual Predator." *Id.* The sexual-predator determination was itself based upon a variety of factors, one of which was Anderson's prior conviction for contributing to the delinquency of a minor in 1971.

Finally, the trial court proceeded to render the findings necessary to impose consecutive sentences (the specifics of which are not relevant here). At no point, however, did the court make any findings with respect to the two-to-ten-year sentence for the conviction for corrupting a minor.

### 2. State Appeals and Habeas Proceedings

Anderson subsequently appealed his sentence to the Ohio Court of Appeals, raising a variety of arguments not relevant to the instant case. The Ohio Court of Appeals affirmed Anderson's conviction. Anderson then appealed to the Ohio Supreme Court, and while that appeal was pending, the U.S. Supreme Court decided *Blakely*. The Ohio Supreme Court, however, denied leave to

appeal, and the U.S. Supreme Court denied Anderson's petition for certiorari. Anderson also moved

to reopen his appeal based, in part, upon his appellate counsel's failure to raise a *Blakely* objection,

but the Ohio Court of Appeals denied this motion.

Anderson then raised a *Blakely* claim in a post-conviction petition for relief in state court.

While that action was pending, he filed this petition for habeas relief in the U.S. District Court for

the Southern District of Ohio, again raising a *Blakely* claim in addition to other claims not relevant

to this appeal. The Ohio Court of Common Pleas subsequently dismissed Anderson's petition for

post-conviction relief, finding that it was untimely. The Ohio Court of Appeals affirmed this

decision, and the Ohio Supreme Court declined to exercise jurisdiction over Anderson's appeal.

Afterwards, the magistrate judge in the federal habeas proceeding recommended that Anderson's

petition be dismissed. The magistrate judge determined that Anderson's *Blakely* claim was

procedurally defaulted. Anderson objected to the magistrate judge's findings with respect to the

*Blakely* claim, and the district court sustained Anderson's objection. In particular, the district court

found that Anderson's *Blakely* claim was not procedurally defaulted and that the state "trial court

justified imposition of maximum, consecutive, and non-minimum terms of incarceration based upon

judicial fact finding prohibited under *Blakely*." Doc. 48 (Dist. Ct. Amend. Order (3/06/09) at 16).

As a result, the district court granted Anderson a conditional writ of habeas corpus pursuant to which

Anderson's sentence was vacated. The State subsequently filed a motion to alter or amend the

judgment, and the district court denied this motion. The State appealed, and on September 8, 2009,

a panel of this court granted the State's motion to stay the district court's judgment pending our decision.

## II. ANALYSIS

### A. Standard of review

"In a habeas corpus proceeding, this Court reviews a district court's legal conclusions *de novo* and its factual findings for clear error." *Goff v. Bagley*, 601 F.3d 445, 455 (6th Cir. 2010) (internal quotation marks omitted). Because the Ohio state courts never addressed the merits of Anderson's *Blakely* claim, the Antiterrorism and Effective Death Penalty Act's deferential standard of review does not apply. *Evans v. Hudson*, 575 F.3d 560, 564 (6th Cir. 2009).[1]

### B. *Apprendi* and *Blakely*

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Blakely*, the Court clarified the meaning of the phrase "statutory maximum," explaining that this referred to the "maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303. With these rules in mind, we proceed to analyze each of the sentences Anderson received.

---

[1]On appeal, the State has expressly waived the procedural default defense it raised below. *See* Appellant Br. at 19-20 n.5.

**C. Non-Minimum, Non-Maximum Sentences**

The State challenges the district court's finding that Anderson's non-minimum, non-maximum sentences were unconstitutional. The State does not dispute that the state trial court made factual findings that were required for it to impose Anderson's non-minimum sentences—namely, its determination that non-minimum sentences "would not be adequate to protect the public nor to punish this offender." Doc. 6-6 at 40 (Sent. Order at 17). Nonetheless, the State advances two arguments as to why habeas relief is nonetheless improper.

First, the State argues that Anderson's non-minimum sentences did not violate *Blakely* because "'[c]onsideration of the egregiousness of a particular offender's misconduct and a determination of whether the length of a sentence will adequately protect the public are inquires that have traditionally been reserved for a sentencing judge.'" Appellant Br. at 42 (quoting *Davis v. Eberlin*, No. 5:06-CV-398, 2008 WL 618968, * 8 (N.D. Ohio Mar. 3, 2008)). In other words, the State argues that the findings that Ohio Revised Code § 2929.14(B)(2) requires do not implicate *Blakely* because they are the kind of findings that trial judges always traditionally have made.[2] This argument is without merit. As Anderson correctly observes, in *Cunningham v. California*, 549 U.S. 270 (2007), the Supreme Court emphatically stated that *Apprendi* established a "bright-line rule" that did not allow for such exceptions. *Cunningham*, 549 U.S. at 291 (internal quotation marks omitted). Indeed, in *Villagarcia v. Warden, Noble Corr. Inst.*, 599 F.3d 529 (6th Cir. 2010), a panel of this

---

[2]We note, however, that the State's analysis in this regard consists of nothing more than a block quote of an unpublished district court decision.

circuit recently found a sentence under § 2929.14(B)(2) to be unconstitutional and in doing so rejected a virtually identical argument to the one that the State advances here. *Villagarcia*, 599 F.3d at 536.[3]

The State also argues that, even if Anderson's non-minimum sentences violate *Blakely*, any error was harmless. "Failure to submit a sentencing factor to the jury . . . is not structural error," and therefore such errors actually must prejudice a defendant in order to warrant reversal. *Washington v. Recuenco*, 548 U.S. 212, 222 (2006). In a habeas proceeding, this means that relief will be granted only if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Villagarcia*, 599 F.3d at 536 (internal quotation marks omitted).

The State appears to argue that any error here was harmless because the state trial court's findings with respect to the severity of the offense and the need to "protect the public" were essentially "based upon the numerous facts found by the jury." Appellant Br. at 41. This is irrelevant, however. Even if the trial court drew upon jury-made factual findings, as Anderson correctly argues, the ultimate question of whether non-minimum sentences were needed "to protect the public [and to] to punish" Anderson, Doc. 6-6 at 40 (Sent. Order at 17), was never submitted to the jury, and the State has made no effort at explaining why the jury likely would have reached the

---

[3]The State argues in its response to the citation that Anderson filed pursuant to Federal Rule of Appellate Procedure 28(j) that *Villagarcia* has no effect upon this case because *Villagarcia* did not deal with maximum sentences under Ohio law. Nonetheless, the State's brief also challenges Anderson's non-minimum, non-maximum sentences, with respect to which *Villagarcia* is dispositive.

same conclusion as did the trial court.[4]  Therefore, we fail to see how any *Blakely* error with respect to Anderson's non-minimum sentences was harmless.

## D.  Non-minimum, maximum sentences

The State also argues that Anderson's non-minimum, maximum sentences do not violate *Blakely*.  In justifying its decision to impose maximum sentences, the state trial court found that Anderson committed the "worst form" of certain offenses, Doc. 6-6 at 42-44 (Sent. Order at 19-21), and that he "pose[d] the greatest likelihood of recidivism."  *Id.* at 44 (Sent. Order at 21).  The State argues that the "likelihood of recidivism" finding alone was sufficient to impose a maximum sentence and that such a finding does not implicate *Blakely*.  Even assuming that the "likelihood of recidivism" finding was sufficient, however, we still conclude that this question should have been submitted to a jury.

The State first argues that the "likelihood of recidivism" finding did not violate *Blakely* because it was based upon jury-found facts.  As discussed above, however, even if the state trial court's recidivism finding were based upon jury-found facts, the question that is relevant here —whether there is a likelihood of recidivism—was never submitted to the jury.[5]

The State also argues that the trial court's "likelihood of recidivism" finding falls within *Apprendi*'s "prior conviction" exception.  In *Apprendi*, the Court acknowledged that findings with

[4]At oral argument, the State explicitly stated that it was *not* arguing that the jury would have found that there was a likelihood of recidivism had the issue been submitted to it.

[5]To the degree that the State argues that Anderson's maximum sentences were harmless, we reject this argument for the reason stated in Section II.C.

respect to prior convictions did not implicate the Sixth Amendment. *Apprendi*, 530 U.S. at 490.

Nonetheless, the Court emphasized that the exception for prior convictions was a "narrow" one. *Id.*

Although the Court suggested that it might be inclined to eliminate the exception altogether in a

future case, it nonetheless found such an exception to be tolerable, in part because of the "procedural

safeguards attached to any 'fact' of prior conviction." *Id.* at 488.

Despite its narrow scope, however, the "prior conviction" exception includes not just the fact

that a conviction occurred but also "subsidiary findings," *United States v. Burgin*, 388 F.3d 177, 185

(6th Cir. 2004), *cert. denied*, 544 U.S. 936 (2005) (internal quotation marks omitted), such as

whether two convictions stem from offenses which occurred on separate occasions. *Id.* at 182–87.

Similarly, the prior-conviction exception encompasses findings with respect to the "nature and

character of prior convictions," *United States v. Barnett*, 398 F.3d 516, 524 (6th Cir.), *cert.*

*dismissed*, 545 U.S. 1663 (2005), including whether a prior conviction is a "crime of violence" under

§ 2K2.1(a)(2) of the U.S. Sentencing Guidelines ("U.S.S.G."), *United States v. Hollingsworth*, 414

F.3d 621, 623 (6th Cir. 2005), or a "violent felony" under 18 U.S.C. § 924(e). *James v. United*

*States*, 550 U.S. 192, 213–14 (2007); *Barnett*, 398 F.3d at 524–25. As Anderson correctly observes,

however, the trial court here did not make a finding simply with respect to the nature of Anderson's

1971 conviction for contributing to the delinquency of a minor, but rather it drew an inference from

that conviction (as well as other facts) and ultimately concluded that there was a "likelihood of

recidivism."

11

The question then becomes when (if ever) do recidivism findings fall under the prior-conviction exception. Anderson argues that the prior-conviction exception never encompasses recidivism findings because recidivism findings go beyond the mere fact of a conviction. This is too broad an assertion, however. Although Anderson cites out-of-circuit case law to the contrary, the Sixth Circuit has held that the question of whether there is a "likelihood that the defendant will commit other crimes" for purposes of § 4A1.3 of the U.S. Sentencing Guidelines need not, at least in all cases, be submitted to a jury, even if the sentencing occurred while the Guidelines were still mandatory.[6] *See United States v. Smith*, 474 F.3d 888, 891–92 (6th Cir. 2007), *abrogated on other grounds by Gall v. United States*, 552 U.S. 38 (2007)*, as recognized in United States v. Tate*, 516 F.3d 459, 470 (6th Cir. 2008). In *Smith*, the district judge "considered the [defendant's] history in an attempt to discern the likelihood that [the defendant's] criminal lifestyle [would] continue," *Smith*, 474 F.3d at 892 (internal quotation marks omitted), and the panel held that this "determination [fell] under a 'traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence.'" *Id.* (quoting *Apprendi*, 530 U.S. at 488).

Nonetheless, just because a recidivism finding may *sometimes* fall within the prior-conviction exception does not mean that it *always* will. The key inquiry, rather, is whether a recidivism finding is actually based upon a prior conviction. In this regard, it is important to note that U.S.S.G. § 4A1.3

---

[6]It should be noted, however, that *Smith* was a post-*Booker* case that involved the application of the *advisory* Guidelines, meaning the panel was not required to address the scope of the prior conviction exception, a fact observed by the concurrence. *See Smith*, 474 F.3d at 895–96 (Gibbons, J., concurring).

differs from Ohio Revised Code § 2929.14(C), and, as a result, the *Smith* case is distinguishable. Under § 4A1.3, the focus is largely upon the defendant's criminal history and prior adjudications. *See* U.S.S.G. § 4A1.3(a)(2). Indeed, in *Smith*, the district court's finding that there was a likelihood of recidivism was based primarily upon its determination that the defendant's criminal history was "extensive and egregious." *Smith*, 474 F.3d at 892 (internal quotation marks omitted). A finding such as this presents less of a constitutional concern because it does not deal with "fact[s] that pertain[] to the commission of the offense for which the defendant is presently charged, but rather . . . fact[s] that pertain[] to a previous offense." *Id.* (internal quotation marks omitted).

Ohio Revised Code § 2929.14(C), by contrast, does not focus upon a defendant's criminal history or prior adjudications. Indeed, as Anderson points out, in the present case, the state trial court devoted barely any attention to Anderson's 1971 conviction in determining that Anderson was a sexual predator, and when it found that Anderson "pose[d] the greatest likelihood of recidivism" for purposes of § 2929.14(C), the trial court only indirectly referenced that conviction by incorporating its previous sexual-predator findings. Doc. 6-6 at 44 (Sent. Order at 21).[7] In other words, the 1971 conviction appears to have played little role in the trial court's analysis, the bulk of which rested upon Anderson's "long term interest in juvenile pornography" and his "long-term involvement with multiple victims in the crimes involving sexual contact with victims." *Id.* Thus, the trial court relied primarily upon facts unrelated to any prior conviction and more associated with

---

[7]In a previous portion of its opinion, the trial court also made a passing reference to "the defendants' [sic] record" in listing reasons for a likelihood of recidivism. *See* Doc. 6-6 at 32 (Sent. Order at 9). This finding, however, did not deal with § 2929.14(C) specifically.

the conduct for which Anderson was convicted.[8] For us to expand the Supreme Court's "narrow" exception for prior convictions to include findings such as these would require us to completely unmoor the exception from its original foundation.

Therefore, the district court did not err in finding that Anderson's non-minimum, maximum sentences violated *Blakely*.

## E. Indeterminate Sentences

The federal district court never addressed explicitly either of Anderson's indeterminate sentences. Nonetheless, the district court did vacate Anderson's sentence in its entirety, presumably determining that both indeterminate sentences were improper. Because the State's principal brief does not address the indeterminate sentences, the State has waived any argument in this regard. *See Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 673 (6th Cir. 2008).

## F. Anderson's Consecutive Sentences

The State also challenges the federal district court's determination that Anderson's consecutive sentences violated *Blakely*. In order to impose consecutive sentences, the trial court at the time of Anderson's sentencing was required to make factual findings similar to those required

---

[8] In this respect, this case differs from *State v. Lowery*, 826 N.E.2d 340 (Ohio Ct. App. 2005), a pre-*Foster* case upon which the State relies. In *Lowery*, the court found that the trial court's likelihood-of-recidivism finding fell within the prior-conviction exception. There, however, the trial court explicitly relied upon the defendant's "'long history of criminal convictions.'" *Id.* at 351 (quoting trial court). Here, by contrast, the state trial judge never explicitly referenced Anderson's sole conviction in finding that Anderson was likely to commit future crimes for purposes of § 2929.14(C), and there is no indication that the conviction played an especially prominent role in its analysis. Furthermore, because the question of whether *Blakely* applies is a question of federal law, *Lowery* is not binding.

to impose non-minimum and maximum sentences. The district court concluded that these findings violated *Blakely*. In *Oregon v. Ice*, 129 S. Ct. 711 (2009), however, the Supreme Court held that *Blakely* and *Apprendi* do not apply to consecutive sentences. *Ice*, 129 S. Ct. at 717. Therefore, the district court erred when it concluded that the state trial court was prohibited from imposing consecutive sentences. *See Evans*, 575 F.3d at 566 (concluding that, in light of *Ice*, argument that consecutive sentences under Ohio law violated *Blakey* was "meritless").

The State suggests that the district court's writ should be modified such that the consecutive nature of the sentences remains in place. As Anderson correctly points out, however, because the district court vacated all of Anderson's sentences, the State is essentially requesting an order to the state courts to impose future sentences consecutively. The State cites no authority for imposing such an order, and we think it wiser to permit the state courts to make a fresh determination as to whether consecutive sentences are appropriate. As a result, the state trial court will have the opportunity to consider any new developments under Ohio state law. In particular, we note that the Ohio Supreme Court recently has accepted review in a case addressing the effect that *Ice* has upon *Foster*'s invalidation of Ohio Revised Code § 2929.14 (E)(4). *See State v. Hodge*, 921 N.E.2d 245 (Ohio 2010). Regardless of how this issue should be resolved, nothing in our opinion precludes the Ohio state courts from declining to impose consecutive sentences as a matter of state law.

## G. Motion to Stay District Court's Judgment

Finally, the State requests that we amend our earlier stay of the district court's judgment in order to provide the State with additional time to arrange for Anderson's resentencing. Although

circuit courts regularly grant stays *pending an appeal*, the State's appeal has come to an end; any further issues concerning the State's ability to comply with the conditional writ are best left to the district court to address in the first instance.[9]  We therefore deny the State's motion, without prejudice to the State's presentation of the issue to the district court.

### III.  CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's judgment.  Furthermore, we **DENY** the State's motion to amend our previous order granting a temporary stay of the district court's judgment.

---

[9]To the degree that the State is arguing that the district court erred in not giving it additional time, the State did not present such an argument in its briefs, thereby waiving the argument.