In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-4405

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEVIN WILLIAMS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 95 CR 510-8—**Elaine E. Bucklo**, *Judge.*

ARGUED OCTOBER 31, 2006—DECIDED JUNE 27, 2007

Before POSNER, WOOD, and EVANS, *Circuit Judges.*

WOOD, *Circuit Judge.* Kevin Williams was convicted of
conspiracy to violate 21 U.S.C. § 846 by knowingly and
intentionally possessing and distributing "cocaine and
cocaine base, commonly known as 'crack,' . . . heroin and
marijuana." In finding him guilty, the jury made no fact-
ual findings about either drug type or quantity, because
the trial took place before the Supreme Court's pivotal
decision in *Apprendi v. New Jersey*, 530 U.S. 465 (2000).
The court sentenced Williams to 320 months' imprison-
ment on June 24, 1998. Williams appealed both his
conviction and his sentence, complaining that the latter
was too heavy, and the government cross-appealed the
sentence on the ground that it was too light. See *United*

*States v. Jackson*, 207 F.3d 910 (7th Cir. 2000). Williams was unsuccessful across-the-board, but the government prevailed on its cross-appeal, and so the case was remanded for resentencing.

On remand, the district court imposed a harsher sentence of 360 months' imprisonment. Williams, as he has properly done throughout these proceedings, complained that this sentence was invalid because there was neither a jury finding nor an admission on his part about either the drug type or quantity—both necessary to establish the statutory maximum. Without specific findings, Williams argues, he is entitled to be sentenced to no more than 10 years in prison, the lowest maximum sentence specified in 21 U.S.C. § 841(b) for someone with his criminal history. (Since he has been in prison for more than 10 years, such a conclusion would mean that he would be entitled to release.) Otherwise, the drug type (cocaine base) and quantity (more than 1.5 kilograms) that the district court attributed to Williams subjected him to a statutory minimum of 20 years and a statutory maximum of life. See 21 U.S.C. § 841(b)(1)(A)(iii). We review the Sixth Amendment error under the harmless error standard, see *Washington v. Recuenco*, ___ U.S. ___, 126 S.Ct. 2546 (2006). Because there was ample evidence that Williams could have foreseen the sale of more than 50 grams of cocaine base by members of the conspiracy, we conclude that the error was harmless and affirm.

# I

Williams was convicted in a massive narcotics conspiracy prosecution against members of a Chicago gang, the Gangster Disciples, the details of which we recounted in the consolidated appeal of Williams and his co-conspirators. See *United States v. Jackson, supra*. We described the Gangster Disciples as an enterprise with 6,000 members,

"engaged mainly in the sale of crack and powder cocaine . . . [with] revenues of some $100 million a year. As befits an operation of such magnitude, the gang had an elaborate structure. [The leader] was assisted by a board of directors, and below the board were governors and regents having territorial jurisdictions . . . ." *Id.* at 913. Williams admitted to being a "regent" in the gang. This was a managerial post in which he allegedly "supervised more than a hundred Gangster Disciples" on the far south side of Chicago in a territory known as "the hundreds" (referring no doubt to the street numbers in that area of the city). *Id.* at 921.

Williams was convicted on one count of conspiracy to distribute narcotics under 21 U.S.C. § 846, for which the penalties are equivalent to those for the distribution of the underlying drug. Although the indictment alleged that the conspiracy was to distribute "cocaine and cocaine base, commonly known as 'crack,' . . . heroin and marijuana," nothing in either the indictment nor the verdict form specified what precise type or amount of drugs were involved in the charged conspiracy. Notwithstanding the lack of input from the jury, Judge Marovich had little trouble finding that Williams, like the other regents who supervised the drug operation in the hundreds and who were sentenced with him, was responsible for "at least 1.5 kilos of crack, or in the alternative, 150 kilos of powder." The judge accordingly sentenced Williams to 320 months under 21 U.S.C. § 841(b)(1)(A), which carries a mandatory minimum sentence of 20 years' imprisonment and a maximum of life if the defendant was responsible for more than five kilograms of cocaine or 50 grams of crack cocaine.

At that point, Williams's case became procedurally complicated. On direct appeal, his conviction was upheld but this court remanded the case for re-sentencing, because we concluded that the district court erred in applying a downward "minor participant" adjustment

under U.S.S.G. § 3B1.2(b). See *Jackson*, 207 F.3d at 921-22. Although Williams raised his Sixth Amendment objection to his sentence during that round, we rejected it. *Id.* at 920-21. Later, the Supreme Court vacated the sentence of one of his co-defendants following *Apprendi*, but Williams's own petition for *certiorari* from this court's decision was denied. See *United States v. Jackson*, 531 U.S. 953 (2000).

For reasons that are not explained, it was almost four years before Williams had a new sentencing hearing. Without the benefit of the two-point reduction, the court found on May 7, 2004, that a higher sentence of 360 months was required. Williams raised his Sixth Amendment claim at this hearing, and it was again rejected, this time by Judge Bucklo, to whom the case had been re-assigned. Williams filed a notice of appeal and, following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the government filed a brief confessing that the court had erred in treating the Sentencing Guidelines as mandatory. We vacated Williams's sentence and remanded again for re-sentencing consistent with *Booker*.

On this second remand, the district court again sentenced Williams to 360 months in prison. Williams (again) raised his Sixth Amendment objection, which the court (again) rejected, holding that the failure to have the jury find drug type and quantity was not a structural error under "the law as interpreted by the Seventh Circuit."

## II

Williams argues that the district court erred under *Apprendi* (and, more accurately, *Booker*, which is the case in this line that deals directly with the federal sentencing guidelines) because it sentenced him to a term that was

longer than the one that would have been possible based on the facts found by the jury. He insists that only reversal will cure this error. The existence of the *Booker* error is plain enough to require little discussion. Williams's second proposition, however, is more problematic. The difficulty of prevailing on the crucial second step of his argument became significantly greater after the briefs were filed in this appeal as a result of the Supreme Court's decision in *Washington v. Recuenco*, *supra*. Williams has been arguing that failure to prove drug type and quantity to a jury is the kind of structural error that justifies automatic reversal. See *United States v. Orozco-Prada*, 732 F.2d 1076 (2d Cir. 1984). *Recuenco* definitively rejects that position; at this point, only if Williams can show that the conceded *Booker* error was not harmless can he prevail.

Harmless error review is grounded in FED. R. CRIM. P. 52(a), which stipulates that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Although the error alleged in this case is of a constitutional dimension, "most constitutional errors can be harmless." *Neder v. United States*, 527 U.S. 1, 8 (1999) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991)). For constitutional errors that do not affect the "framework within which the trial proceeds," *Neder*, 527 U.S. at 8, courts must apply "Rule 52(a)'s harmless error analysis and must 'disregar[d]' errors that are 'harmless beyond a reasonable doubt,'" *Id*. at 7 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). "The test . . . is whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Neder*, 527 U.S. at 15 (quoting *Chapman*, 386 U.S. at 24).

In *Recuenco*, the Court concluded that "sentencing factors, like elements, are facts that have to be tried to the jury and proved beyond a reasonable doubt." 126 S.Ct. at

2552. The implication of equating sentencing factors and elements of a crime for purposes of the requirements of the jury and the burden of proof is to equate them also for harmless error purposes. Thus, the Court held in *Recuenco*, "an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.* at 2551 (emphasis in original). Accordingly, "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not a structural error," and harmless error review must be applied. *Id.* at 2553. Applied to this case, that means that we must decide whether the failure to have the jury decide beyond a reasonable doubt the drug type and quantity issues that would raise the statutory maximum from 10 years to life was harmless error.

We reiterate that we now know, with the benefit of 20-20 hindsight, that it was indeed error not to obtain a jury finding on drug type and amount. As *Apprendi* put it, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The Court clarified in *Blakely v. Washington* that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." 542 U.S. 296, 303 (2004) (emphasis in original). *Booker* extended these holdings to the federal sentencing regime. 543 U.S. at 243-44. Under 21 U.S.C. § 841, which describes the underlying substantive crime that forms the basis for Williams's sentence, the statutory maximum penalty that can be imposed in the absence of special findings on drug type and amount is 10 years (given Williams's criminal history). See 21 U.S.C. § 841(b)(1)(D) (less than 50 kilograms of marijuana; repeat offender). In

contrast, as we noted earlier, the maximum penalty for possessing with intent to distribute more than 50 grams of crack or five kilograms of cocaine is life in prison. See 21 U.S.C. § 841(b)(1)(A). Williams's 30-year sentence plainly exceeds that which would have been possible based on the facts the jury found. See, *e.g.*, *Knox v. United States*, 400 F.3d 519, 522 (7th Cir. 2005). The error is, therefore, obvious.

The central question is whether "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Neder*, 527 U.S. at 15 (quoting *Chapman*, 386 U.S. at 24). We are convinced, beyond a reasonable doubt, that this is the case. The government presented evidence of crack cocaine that Williams sold; it obtained that evidence from ledgers that recorded the drug transactions of the Gangster Disciples, taken from the home of one of his co-defendants. (The ledgers themselves were not part of the record on appeal, but they were summarized in the government's brief on direct appeal. In addition to detailing the general structure of the Gangster Disciples, this summary also lists records of specific drug transactions.) Included are records of drugs being given to Williams to sell, such as "3 ounces to 'K-Dog' [Kevin Williams]" and "4½" for a price of "$3500." Three ounces is approximately 85.72 grams, while four and a half ounces is about 114.28 grams; together these two transactions alone far exceed the 50 grams of crack necessary to bring Williams within the statutory sentencing range of 20 years to life.

In addition, the government presented extensive evidence about the sales of crack and powder cocaine conducted by the drug conspiracy as a whole. Even if we were to disregard the ledger evidence of Williams's personal drug activity (and there is no reason why we should), he would still be criminally responsible for the drugs reasonably foreseeable to him that were handled by the

rest of his co-conspirators. See *United States v. Edwards*, 945 F.2d 1387 (1991). It is difficult to imagine how a person in the managerial role of regent in the Gangster Disciples—an enterprise whose principal business was dealing crack and cocaine—could not have foreseen the sale of drugs of a type, and in an amount, sufficient to trigger § 841(b)(1)(A)'s greater statutory maximum. In assessing the sentence of Harold Jackson, one of the other regents in the hundreds, we noted that he could have been convicted by a jury "of being involved in the sale of hundreds, if not thousands of grams of crack." *United States v. Jackson*, 236 F.3d 887, 888 (7th Cir. 2001). Williams's role as a regent was also important. At sentencing for the regents who presided over the hundreds, including both Williams and Jackson, the government singled out Williams for the scope of his role in the drug conspiracy and asked that the court give him a longer sentence than the other regents to reflect his greater role in the drug conspiracy.

At the first sentencing hearing, Judge Marovich calculated the amount of drugs Williams and the other regents in the hundreds could reasonably have foreseen were being sold as part of the conspiracy on the turf that they governed. The evidence before him showed that the more than 100 Gangster Disciples in that area were dealing "15 kilograms of powder a day, or four and a half kilos of crack per day, without drawing a distinction between those two controlled substances." He calculated that approximately 312 kilos of crack and 2,080 kilos of power were sold on an annual basis in Williams's area, with each of the regents supervising "anywhere from 10 to 12 percent" of those sales. Those numbers more than satisfied the court that the regents could be held responsible for "at least 1.5 kilos of crack, or in the alternative, 150 kilos of powder." Given the evidence of the size of the Gangster Disciples' crack and cocaine operation in the hundreds

and Williams's leadership role, we are satisfied that the error in failing to submit the questions of drug type and quantity to a jury was harmless.

The sentence of the district court is AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*