**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 13a0804n.06**

**No. 11-5843**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| MARK ALLEN, | ) | **FILED** |
|  | ) | Sep 03, 2013 |
| Petitioner-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | On Appeal from the United States |
|  | ) | District Court for the Middle |
| TONY PARKER, Warden, | ) | District of Tennessee |
|  | ) |  |
| Respondent-Appellee. | ) |  |

Before:     BOGGS, MOORE, and SUTTON, Circuit Judges.

BOGGS, Circuit Judge.  In 2003, a jury convicted Mark Allen of child rape, especially aggravated exploitation of a minor, and exhibition of materials harmful to a minor.  During his sentencing hearing, the state trial judge found a number of statutory enhancements applicable to Allen's case, and sentenced him to 24 years in prison    four years above his presumptive sentence according to the state sentencing guidelines.  Allen seeks a writ of habeas corpus, claiming that this sentencing scheme violated his Sixth Amendment right to a jury trial.

Under the law as it stands today, Allen is clearly right: the Supreme Court held in *Cunningham v. California*, 549 U.S. 270 (2007), that hybrid sentencing schemes, such as the former Tennessee regime, violate a defendant's right to present every element that may increase his maximum sentence to a jury for a factual finding.  Unfortunately for Allen, the Court issued

*Cunningham* several months after his sentence became final. For the purposes of his federal habeas corpus petition, he could only rely upon *Blakely v. Washington*, 542 U.S. 296 (2004).

In our review of this case, we noticed that neither party briefed the issue of whether Allen could establish entitlement to habeas relief without *Cunningham*. Accordingly, we directed the clerk to ask the parties to prepare for oral arguments on this issue. Notwithstanding this, the state maintained the position it took in the district court and conceded constitutional error during oral arguments.

Under normal circumstances, such a concession is not of moment  we rule against the party on the conceded point and move on. However, when the point conceded is the merits of a federal habeas claim under 28 U.S.C. § 2254(d), the court is faced with a serious dilemma. Concession of an unmeritorious § 2254(d) claim creates the very real possibility of granting a writ where it is otherwise not warranted. In light of the very narrow jurisdiction given to federal courts to entertain and grant habeas applications, we are forced to ask whether or not we may accept the state's concession on this point.

We conclude that we may. The merits of a § 2254(d) claim are neither jurisdictional nor unwaivable, and the state may therefore abandon them as it sees fit. However, the putative *Blakely* violation created by its concession is harmless. For the reasons that follow, we affirm the district court and deny Allen's petition for habeas relief.

I

The following facts are taken from the 2006 opinion of the Tennessee Court of Criminal Appeals in *Allen v. State*, No. M2005-00601-CCA-R3-PC, 2006 WL 618297, at *1  2 (Tenn. Crim.

App. March 13, 2006). Beginning in late 2001, the victim, D.M., began spending time with Allen and his wife. The victim's mother, a co-worker of the petitioner, hoped that Allen would be a good male influence for her son. The victim visited the Allens at their home periodically through the spring of 2002. That July, D.M. told his mother that the Allens had engaged in sexual activity with him. After contacting police, the victim's mother recorded a conversation between D.M. and the petitioner, during which Allen made a number of incriminating statements. Police subsequently went to the Allens' home and obtained consent to search the premises. They found a pornographic video that the victim claimed Allen showed him, as well as sexual paraphernalia that D.M. had described to the police.

Both Allen and his wife waived their *Miranda* rights and gave written and oral statements to the police. Allen admitted to showing the victim pornographic videos and magazines, to speaking with the victim about sex, and to engaging in mutual masturbation and oral sex with the victim. Allen's wife confessed to having oral and vaginal sex with the victim while her husband watched. She also stated that Allen videotaped some of his sexual contact with the victim and that she later watched it before destroying the tape. A Tennessee grand jury indicted both Allen and his wife in September 2002. Allen was charged with one count each of exhibition of materials harmful to a minor, especially aggravated sexual exploitation, and rape of a child.

Allen was tried jointly with his wife in October 2003 and found guilty on all counts. In November, the trial judge sentenced the petitioner to a total of 24 years in prison. Allen's sentences for the exhibition and sexual-exploitation counts were ordered to run concurrent to a 24-year sentence for the child-rape conviction. Under the Tennessee sentencing regime in place at the time,

Allen's presumptive sentence for the child-rape conviction was 20 years. However, the trial judge found three statutory enhancements applicable to Allen's case: leadership of the criminal activity, commission of an offense to gratify a desire for pleasure or excitement, and abuse of a position of private trust. Under Tennessee's hybrid sentencing regime, the finding of these statutory enhancements vested the judge with discretion to impose a term above the presumptive sentence.

Initially, Allen did not take direct appeal of his conviction or sentence. He filed a *pro se* application for a delayed appeal in November 2004. The trial court granted his application in January 2005. On appeal, Allen argued, *inter alia*, that the trial court violated his Sixth Amendment jury-trial right by enhancing his sentence beyond the presumptive 20-year term for child rape based upon factual findings not made by the jury. *See Blakely*, 542 U.S. at 303 04. The Tennessee Court of Criminal Appeals affirmed his conviction in March 2006. *Allen*, 2006 WL 618297, at *11. Citing the Tennessee Supreme Court's then-recent decision in *State v. Gomez* [*Gomez I*], 163 S.W.3d 632, 661 (Tenn. 2005), the Court of Criminal Appeals observed that Tennessee's sentencing scheme survived *Blakely* because, notwithstanding the necessity of an initial finding of the applicability of a statutory enhancement, the decision to increase a defendant's sentence beyond the presumptive term was left solely within the discretion of the trial judge. *Id.* at *10. The Tennessee Supreme Court denied Allen's application for permission to appeal in August 2006. He did not petition for a writ of certiorari from the United States Supreme Court, and thus his sentence became final in November 2006.

In that same month, Allen filed a petition for post-conviction relief in state court, raising claims of ineffective assistance of trial and appellate counsel. These ineffective-assistance claims

addressed issues unrelated to the enhancement of his sentence. Both the trial and intermediate appellate courts denied his petition. The Tennessee Supreme Court again denied permission to appeal.

In February 2010, Allen filed a *pro se* petition for habeas corpus relief in the United States District Court for the Middle District of Tennessee. He alleged insufficiency of the evidence, ineffective assistance of counsel, and impermissible enhancement of his sentence under *Blakely*. The district court dismissed all issues except the alleged *Blakely* violation and referred the matter to a magistrate judge for an evidentiary hearing. In its briefing before the magistrate judge, the state for the first time conceded that Allen's sentence resulted in a decision contrary to *Blakely*. Notwithstanding the concession, the magistrate judge recommended denying the petition, finding that the state court's error was harmless because of overwhelming evidence in the record to support a jury finding on all three of the improper enhancements. The district court adopted the magistrate judge's recommendations in full, but granted a certificate of appealability to this court.

II

During the pendency of Allen's delayed direct appeal, the United States Supreme Court granted a writ of certiorari in *Cunningham v. California*, 546 U.S. 1169 (2006). The petitioner in *Cunningham* challenged California's determinate-sentencing law, a hybrid scheme that, similar to Tennessee's, prescribed a presumptive sentence within the statutory range of punishment, but gave judges discretion to vary based upon findings of enhancing or mitigating factors. In his petition for certiorari, Cunningham highlighted a split among ten states as to whether such schemes were prohibited by *Blakely*. Seven states answered this question in the affirmative, holding that *Blakely*

established a bright-line rule that prohibited judges from increasing a defendant's sentence, based upon their own fact-finding, beyond the maximum authorized by the jury's verdict or the defendant's admissions. A minority of states, including Tennessee, read *Blakely* to establish a standard by which judicial fact-finding would be permissible in sentencing so long as it was conducted within a scheme with broad discretion.

In January 2007, the Court held that sentencing schemes such as Tennessee's violated the Sixth Amendment jury-trial right. The Court explained that "[i]f the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied." *Cunningham*, 549 U.S. at 290. The following month, the Court summarily vacated *Gomez I* in light of its decision in *Cunningham*.[1] *Gomez v. Tennessee*, 549 U.S. 1190 (2007). On remand, the Tennessee Supreme Court found the state's sentencing scheme unconstitutional as applied to a defendant who, like Allen, had his sentence enhanced after findings of fact by the trial judge. *State v. Gomez* [*Gomez II*], 239 S.W.3d 733, 740  41 (Tenn. 2007).

As the law stands today, it is beyond dispute that Allen's 2003 sentence violated the Sixth Amendment. However, the current state of the law is not the standard by which we assess a habeas petition. The "backward-looking language" of § 2254(d) "requires an examination of the state-court decision at the time it was made." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). This

---

[1]Unlike Allen, the defendant in *Gomez* petitioned for a writ of certiorari in the Supreme Court. Petition for a Writ of Certiorari, *Gomez v. Tennessee*, 549 U.S. 1190 (2007) (No. 05-296), 2005 WL 2148318. To be sure, it seems quite possible that the Court would have summarily vacated the decision in Allen's case had he filed a petition with the Court.

principle extends not only to the state of the factual record, *see ibid.*, but also to the state of the law.

As the Court explained in *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011), § 2254(d)(1) requires federal

courts to assess what the state court knew and did, and to measure the reasonableness of its

adjudication "'against this Court's precedents as of the time the state court renders its decision.'"

*Ibid.* (quoting *Pinholster*, 131 S. Ct. at 1399) (internal quotation marks omitted). Accordingly, we

may not disturb a state-court adjudication based upon a subsequent opinion of the Supreme Court

that invalidates the state court's otherwise-reasonable legal analysis.

### III

In its brief before the magistrate judge, the state conceded that Allen's sentence violated

*Blakely* and was contrary to clearly established federal law. It is unclear from this alone whether the

state conceded a *Blakely* violation as understood pre- or post-*Cunningham*. Indeed, the state's brief

did not even cite the 2007 case. Were the state's admission rooted in a post-*Cunningham*

understanding of *Blakely*, we might be able to disregard it as an attempt to waive the strictures of

*Greene*. *Cf. Moore v. Mitchell*, 708 F.3d 760, 784 (6th Cir. 2013) (holding that the state may not

waive the evidentiary restrictions of *Pinholster*). However, the state clarified during oral argument

that it conceded error solely under *Blakely*.

As elucidated in the previous section, this concession is wrong as a matter of law. However,

the state, as master of its own case, may waive nonjurisdictional issues. *Day v. McDonough*, 547

U.S. 198, 205 (2006). The courts of appeal are bound to respect such a waiver if, as here, it is done

deliberately. *Wood v. Milyard*, 132 S. Ct. 1826, 1830 (2012).

In a recent published opinion, a panel of this circuit suggested that § 2254(d) may be jurisdictional. *Moore*, 708 F.3d at 781 ("The Supreme Court has given plenty of indication that the restrictions of AEDPA are strong and binding on federal courts. These restrictions have all the hallmarks of a jurisdictional limitation on the power of the federal courts themselves."); *see also Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) ("Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions."). The panel in *Moore* ultimately decided the case without squarely resolving this issue. We, however, must face the issue now. In order to determine whether or not the state may waive a meritorious, case-dispositive argument under § 2254(d), we must first decide whether or not § 2254(d) is jurisdictional.

A

In *Gonzales v. Thaler*, 132 S. Ct. 641 (2012), the Court addressed the jurisdictional nature of AEDPA with regards to § 2253(c). Section 2253(c)(1) provides that "an appeal may not be taken to the court of appeals" from "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless "a circuit justice or judge issues a certificate of appealability." A certificate of appealability may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right," § 2253(c)(2), and the certificate "shall indicate which specific issue" satisfies that showing, § 2253(c)(3). The respondent in *Gonzales* asserted that § 2253(c)(3), as a requisite of the jurisdictionally necessary certificate, operated as a bar on appellate consideration of all issues omitted from the certificate.

The Court rejected this argument. While § 2253(c)(1) is, by its plain text, a jurisdictional provision, the Court held that neither paragraph (c)(2) nor (c)(3) contained language manifesting a similar jurisdictional limit on the scope of AEDPA. Central to this holding was the clear-statement rule: "A rule is jurisdictional if the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional. But if Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional." *Gonzales*, 132 S. Ct. at 648 (citations and internal quotation marks omitted). This principle carried particular force in the context of AEDPA, where it is clear the Congress knew how to, and in fact used, jurisdictional language. *See id.* at 649 ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally.'" (alteration in original) (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)).

The Court's treatment of § 2253(c) is instructive. We look specifically to § 2253(c)(2), which the Court concluded, and the respondent conceded, is nonjurisdictional. 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if . . . ."). The text of § 2254(d)(1) is noticeably similar. *Id.* § 2254(d)(1) ("An application for a writ of habeas corpus . . . shall not be granted . . . unless . . . .). The *Gonzales* Court contrasted paragraph (c)(2) with paragraph (c)(1), observing that Congress clearly knew how to invoke jurisdictional language and that, by not doing so in paragraph (c)(2), it intended (c)(2) to be nonjurisdictional. *Gonzales*, 132 S. Ct. at 649. The same argument applies to paragraph (d)(1). The drafters of AEDPA knew how to use jurisdictional

language, yet they omitted it from the text of § 2254(d)(1). Section § 2254(d)(1) is therefore nonjurisdictional.

It is important to note that this does not mean that either § 2253(c)(2) or § 2254(d)(1) are not *mandatory*. Indeed, one of the crucial inferences taken from *Gonzales* is that there is a distinction between a "mandatory" provision and a "jurisdictional" provision. While all jurisdictional provisions are mandatory, not all mandatory provisions are jurisdictional. *See* 132 S. Ct. at 651 ("This Court, moreover, has long rejected the notion that all mandatory prescriptions, however emphatic, are . . . properly typed jurisdictional." (internal quotation marks omitted)). Though not jurisdictional, mandatory provisions must still be followed. *See ibid.* ("If a party timely raises the COA's failure to indicate a constitutional issue, the court of appeals panel *must* address the defect . . . ." (emphasis added)). However, mandatory nonjurisdictional provisions do not strip courts of their ability consider an issue in the same way that mandatary jurisdictional provisions do.

B

While mandatory nonjurisdictional provisions are not categorically unwaivable, this does not mean that they are categorically waivable. Some mandatory provisions, such as AEDPA's one-year statute of limitation, are subject to deliberate abandonment by the state. *Wood*, 132 S. Ct. at 1834 35. Others, such as the deferential standard of review under § 2254(d)(1), may not be forfeited or waived. *Brown v. Smith*, 551 F.3d 424, 428 n.2 (6th Cir. 2008); *see also K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir. 1996) (holding that the standard of review is a

determination that the court makes for itself). We recently held the evidentiary restricts of *Pinholster* are similarly unwaivable. *Moore*, 708 F.3d at 784.

There is a substantial difference between the first of these examples and the last two. Statutes of limitation are an affirmative defense to a cause of action. Standards of substantive and evidentiary review define the action itself. We have forbidden litigants from agreeing to case-specific substantive and evidentiary standards in habeas cases, because allowing them to do so would frustrate Congress's intent to limit the scope of federal review of state criminal proceedings. *Cf. Richter*, 131 S. Ct. at 786 ("[AEDPA] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther."). Conceding a defense to a claim under §2254(d) does not raise the same concerns. Rather than agreeing to relief under a completely different set of rules than those established by Congress, concession of a defense simply manifests accord with the petitioner's argument for relief under the established §2254(d) standard.

The type of concession made here is the type of concession that the state may make as master of its own case. Waiver of an argument against the merits of a claim for relief under § 2254(d)(1) is quite different from an attempt to waive the deferential standard of paragraph (d)(1) itself or the backward-looking evidentiary restrictions explicated in *Pinholster*.[2] Rather, the concession here is

---

[2]As noted earlier, the state has conceded this argument under a pre-*Cunningham* understanding of *Blakely*. Accordingly, this is not an attempt to waive the backward-looking legal restrictions of *Greene v. Fisher*, which forecloses our consideration of *Cunningham*. Were this the case, the outcome might be quite different. *See Moore*, 708 F.3d at 784.

more analogous to an intentional abandonment of an affirmative defense. *See Wood*, 132 S. Ct. at 1834 35. In both instances, the state waives an argument that, under the established rules of § 2254(d), would have defeated the petitioner's claim for relief. Such a waiver does not ask us to grant relief beyond the confines of our jurisdiction, nor does it ask us to ignore a mandatory facet of AEDPA.

If the State of Tennessee wishes to confess to a violation of clearly established federal law, it is free to do so. We may not ignore the state's explicit and unequivocal waiver. We therefore hold that Allen has made an initial showing of entitlement to relief under AEDPA.

IV

The state urges us to deny the habeas writ because the record contains overwhelming and uncontroverted evidence that would support a jury finding on all three of the applicable enhancements, thus rendering the *Blakely* error harmless. We agree. We therefore affirm the district court's denial of habeas relief.

A

A *Blakely* error is not "structural" and is thus amenable to a harmless-error analysis. *Villagarcia v. Warden*, 599 F.3d 529, 536 (6th Cir. 2010) (citing *Washington v. Recuenco*, 548 U.S. 212, 218, 221 (2006)). When reviewing sentencing errors on direct appeal, *e.g.*, federal sentences imposed prior to (but finalized after) *United States v. Booker*, 543 U.S. 220 (2005), we apply a defendant-friendly standard of review remand is necessary unless we are certain that any error did

not affect the district court's selection of the sentence imposed. *United States v. Hazelwood*, 398

F.3d 792, 801 (6th Cir. 2005) (citing *Williams v. United States*, 503 U.S. 193, 203 (1992)).

However, we apply the more state-friendly standard from *Brecht v. Abrahamson*, 507 U.S.

619 (1993), in the context of AEDPA.[3] Under the *Brecht* standard, "an error is harmless unless it

had substantial and injurious effect or influence" on the outcome of the case. *Fry v. Pliler*, 551 U.S.

112, 116 (2007) (internal quotation marks omitted). "Under *Fry*, an error is considered not harmless

when 'the matter is so evenly balanced that the habeas court has grave doubt as to the harmlessness

of the error.'" *Villagarcia*, 599 F.3d at 537 (quoting *Hereford v. Warren*, 536 F.3d 523, 553 (6th

Cir. 2008)).

The *Recuenco* court observed that

> Our decision in *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000),] makes clear that
> "[a]ny possible distinction between an 'element' of a felony offense and a
> 'sentencing factor' was unknown to the practice of criminal indictment, trial by jury,
> and judgment by court as it existed during the years surrounding our Nation's
> founding." [*Id.*] at 478 (footnote omitted). Accordingly, we have treated sentencing
> factors, like elements, as facts that have to be tried to the jury and proved beyond a
> reasonable doubt. [*Id.* at 483  84.]

548 U.S. at 220 (second alteration in original). We accordingly treat a *Blakely* error the same way

we would an error in instructing the jury on the essential elements of a crime. *Ibid.* (citing *Neder*

*v. United States*, 527 U.S. 1 (1999)); *see also United States v. Williams*, 493 F.3d 763, 766 (7th Cir.

---

[3]Allen urges us to employ a stricter standard of review for the purposes of this case. He claims that a *Blakely* error can only be harmless if it amounts to a "quasi-clerical" error. He does not elaborate what he means by this, but he apparently urges a stricter standard than that of *Hazelwood*. He has provided no legal basis for this assertion, and it conflicts with the law of this circuit.

2007) ("The implication of equating sentencing factors and elements of a crime for purposes of the requirements of the jury and the burden of proof is to equate them also for harmless error purposes."). We will find a jury-instruction error to be harmless if it is "is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *United States v. King*, 272 F.3d 366, 378 (6th Cir. 2001) (citing *Neder*, 527 U.S. at 18). In the context of AEDPA review, we need not be "certain" of this, but only free of "grave doubt." *Villagarcia*, 599 F.3d at 537 & n.7.

B

No such doubt can exist in this case. The record is replete with uncontroverted evidence supporting each of the enhancements applied by the state trial court. We address them in turn.

1

First, the trial court found that Allen was "a leader in the commission of an offense involving two (2) or more criminal actors . . . ." Tenn. Code Ann. § 40-35-114(3) (2002) (current version at Tenn. Code Ann. § 40-35-114(2) (2012)). The state would have us accept a statement made by Allen at his sentencing, in which he claimed that his wife joined the abuse only at his urging. However, this unsworn, post-trial statement was not presented to the jury and does not constitute a judicial admission. It is thus inappropriate for our consideration. What is appropriate, however, is Allen's voluntary and uncontroverted statement to the police: "[A]nything that my wife might have done was total coercion and manipulation on my part." Allen provides us with no reason why we should have grave doubt in the veracity of his own words. Any error by the state trial court was harmless.

2

The second applicable enhancement, that Allen committed the crimes to gratify a desire for pleasure or excitement, Tenn. Code Ann. § 40-35-114(8) (2002) (current version at Tenn. Code Ann. § 40-35-114(7) (2012)), requires "additional objective evidence [beyond the sex act itself] of the defendant's motivation to seek pleasure or excitement through sexual assault." *State v. Arnett*, 49 S.W.3d 250, 262 (Tenn. 2001). Such additional evidence may include, but is not limited to, "sexually explicit remarks and overt sexual displays made by the defendant, such as fondling or kissing a victim or otherwise behaving in a sexual manner . . . ." *Ibid.* Specifically in cases of child exploitation and child rape, sexually explicit discussion and the display of pornography may satisfy this requirement. *See, e.g.*, *State v. Osborne*, 251 S.W.3d 1, 26 (Tenn. Crim. App. 2007) (applying the enhancement to a child-rape conviction on evidence that the defendant showed pornography to the victims as means of encouraging them to engage in similar sexual acts); *State v. Aaron*, No. M2002-02288-CCA-R3-CD, 2004 WL 1533825 at *19 (Tenn. Crim. App. July 8, 2004) (affirming application to a child-exploitation conviction on evidence that the defendant showed the victim child pornography and bragged about having sexual relations with young girls before forcing her to take nude photos).

The record before us contains a prodigious amount of evidence that Allen sought to gratify his desire for pleasure and excitement through his crimes: He engaged in sexually explicit discussions with the boy, displayed pornography, watched as his wife engaged in oral and vaginal sex with the victim, and himself engaged in mutual fellatio with the boy. Allen videotaped some of

these sexual encounters and later viewed them with his wife. As the magistrate judge concluded, this evidence leaves little doubt, let alone grave doubt, that the jury would have found this element to be satisfied beyond a reasonable doubt were this question put to it.

3

Lastly, the state trial court found that Allen abused a position of private trust. *See* Tenn. Code Ann. § 40-35-114(16) (2002) (current version at Tenn. Code Ann. § 40-35-114(14) (2012)). The state must prove two elements to satisfy this enhancement. It must first show that "the offender formally or informally stood in a relationship to the victim that promoted confidence, reliability, or faith." *State v. Kissinger*, 922 S.W.2d 482, 488 (Tenn. 1996). "The position of parent, step-parent, babysitter, teacher, coach are but a few obvious examples [of a position of trust]." *Ibid.* Additionally, the existence of a position of trust does not necessarily depend upon "the length or formality of the relationship, but upon the nature of the relationship." *Ibid.* If the evidence supports this first element, the state must then show that "the position occupied was abused by the commission of the offense." *Ibid.*

The record is, once again, teeming with uncontroverted evidence that Allen occupied and abused a position of private trust with D.M. According to the victim's mother, D.M. did not know his father and lacked a male role model in his life. The victim's mother approved of the friendship between Allen and D.M., in the hope that Allen would serve as the father figure that D.M. lacked. The victim spent substantial time at Allen's residence under his care and supervision    roughly one

day a week between the Winter of 2001 and the Spring of 2002.  Allen's attorney did not cross examine the victim's mother.

Also telling is a taped phone conversation between Allen and the victim.  D.M. expressed shame and embarrassment about what happened with him, Allen, and Allen's wife.  Allen assured the boy that "there [was] nothing to be ashamed of and nobody knows."  Allen repeatedly sought assurance that D.M. would not tell anyone, at one point stating: "You promise me? . . . I mean honor, word of honor to me [D.M.], which is the you know biggest word do you know what I'm saying [sic]."  He went on to ask (assumably rhetorically) whether D.M. would feel better if he just turned himself in and went to jail, to which D.M. responded in the negative.  Once again, Allen did not contest the substance of this conversation.

It is clear from the record before us that Allen occupied a role of trust with D.M., whether it be that of a father figure, as the victim's mother had hoped, or that of a care taker, as he certainly was for the duration of D.M.'s visits to his home.  The taped phone call between the victim and Allen demonstrates Allen's abuse of this position through his repeated attempts to manipulate and shame D.M. into silence.  This, of course, is in addition to the highly reasonable inference that Allen and his wife coaxed D.M., at least to some degree, into the abusive sexual activity at the center of this case.  Again, we have no doubt that the failure to submit this element to the jury was harmless in light of the record before us.

4

Allen resists this conclusion by arguing that these enhancements are subjective in nature, that our review of the applicable evidence requires "difficult character and credibility assessments," and that this alone should give us grave doubt as to the harmlessness of the trial court's error. Appellant's Br. 26. In essence, Allen argues that, though the evidence could support a jury finding on all three enhancements, it does not *necessarily* support such a finding, and we must therefore find the failure to submit these elements to the jury was harmful. In many respects, this is a repackaging of his earlier argument for a "quasi clerical" standard of harmless-error review. We note again that this argument is without a legal basis and is contrary to the law of this circuit.

To the extent that this represents an argument against the weight of the record to support the enhancements, we are simply unpersuaded. Allen would have us ignore a near-insurmountable amount of relevant, persuasive, and uncontroverted evidence based upon speculation of what the jury might have done were these enhancements put to it. That is not how a harmless-error analysis works, especially within the deferential context of AEDPA. So long as the record leaves us free of grave doubt that a jury would have found the omitted element or enhancement satisfied beyond a reasonable doubt, we must leave the conviction and sentence undisturbed. As the Supreme Court stated in *Neder*, the case that formed the logical basis for *Recuenco*: "[T]his approach reaches an appropriate balance between society's interest in punishing the guilty and the method by which decisions of guilt are to be made." 527 U.S. at 18. Because he has failed to show harm resulting from the state's admitted error, Allen is not entitled to habeas relief.

C

Our opinion today is entirely consistent with our opinion in *Villagarcia*. There, a panel of this court found that Ohio's pre-*Blakely* sentencing regime violated the petitioner's Sixth Amendment jury-trial right. 599 F.3d at 537 39. Similar to the state here, the respondent in *Villagarcia* claimed that, based on the record, the state court undoubtably would have imposed the same sentence absent the *Blakely* error, and it was therefore harmless. *Ibid.* The panel disagreed, citing *State v. Foster*, 845 N.E.2d 470 (Ohio 2006), *abrogated on other grounds by Oregon v. Ice*, 555 U.S. 160 (2009). *Villagarcia*, 599 F.3d at 537 39. In *Foster*, the Ohio Supreme Court found the statutory provision under which the petitioner was sentenced to be unconstitutional in light of *Blakely* and severed the provision from the state's sentencing scheme. *Foster*, 845 N.E.2d at 498 99. The resulting post-*Foster* regime gave Ohio courts unfettered discretion to consider any relevant enhancing or mitigating factor, discretion that trial courts did not enjoy pre-*Foster* when sentencing felons such as Villagarcia. Though the panel noted that the state's argument "[was] not without force," *Villagarcia*, 599 F.3d at 537, it ultimately agreed that the pre-*Foster* sentencing court was unable to consider a number of mitigating factors that, based upon the record before it, may well have resulted in a reduced sentence for Villagarcia under the post-*Foster* framework and conditional habeas relief was therefore warranted. *Id.* at 538 39.

Unlike Ohio, Tennessee's sentencing statute has remained mostly the same. Though judges are no longer required to do so, the statute still recommends that sentencing judges consider the same basic list of enhancing and mitigating factors. The only major difference is that the mandatary

threshold finding required by the pre-*Cunningham* version of the statute has been eliminated to give a court complete discretion at the beginning of its analysis. Allen has provided us with no reason to doubt that a sentence imposed under the post-*Cunningham* statute would be similar in all material respects to the sentence he is presently serving.[4] Habeas relief would be fruitless and therefore inappropriate.

V

We are free of grave doubt that any error committed by the trial court did not prejudice Allen. He has accordingly failed to prove his entitlement to relief under AEDPA. We **AFFIRM** the district court's denial of the writ of habeas corpus.

---

[4]After oral argument, Allen provided an additional citation to *Lovins v. Parker*, 712 F.3d 283 (6th Cir. 2013). He asserts, without further explanation, that the *Lovins* court "did not hesitate in finding that there was no harmless [*Blakely*] error . . . ." It is very true that the *Lovins* court "did not hesitate" in finding that the error there was not harmless, specifically because the state forfeited the argument. *Id.* at 303.