NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0124n.06

No. 19-3085

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 28, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SCOTT WAGNER | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| UNITED STATES OF AMERICA | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Respondent-Appellee. | ) | |

BEFORE:     ROGERS, STRANCH, and THAPAR, Circuit Judges

ROGERS, Circuit Judge.  Sentenced to 75 months' imprisonment for numerous federal white-collar crimes, Scott Wagner moved for relief under 28 U.S.C. § 2255, arguing that his retained counsel was ineffective for failing to file a notice of appeal.  Although Wagner immediately instructed his counsel to appeal after the jury trial, he subsequently modified that request after discussion with his attorney.  He has accordingly failed to show the district court erred in holding that his counsel was ineffective in not filing a notice of appeal.  With respect to Wagner's second claim, the district court properly concluded that Wagner did not receive ineffective assistance of counsel as to the forfeiture allegations against him.

**I.**

From 2001 until at least 2012, Scott Wagner participated in a fraudulent billing scheme to steal over $2.8 million from Owens-Illinois, Inc., an international producer of glass containers.

Wagner was the majority owner of Construction Equipment Supply Company ("CES"), which was in the business of renting and selling industrial machinery and equipment for commercial use. CES rented equipment to Castalia Farms, which was a hospitality facility in Ohio that Owens-Illinois had owned and operated since the 1930s. Wagner devised a scheme with Michael Conrad, an employee of Castalia Farms, to submit false and fraudulent invoices from CES to Owens-Illinois for goods and services that were not actually delivered or performed by CES. For example, Wagner would submit invoices seeking payment for equipment rentals that never occurred. Conrad would receive the fraudulent invoices from Wagner and submit them to Owens-Illinois for payment. Owens-Illinois would pay these invoices with interstate wire transfers to CES. In turn, Wagner would share the fraud proceeds with Conrad through various types of kickbacks. In one instance, Wagner billed nearly $48,000 to Owens-Illinois for landscaping purportedly performed for Castalia Farms but which was done entirely at Wagner's personal residence. Conrad was paid $25,000 for his assistance in submitting the fraudulent invoice to Owens-Illinois.

Wagner, Conrad, and others involved in the scheme were indicted in November 2015. The indictment charged Wagner with 32 counts of wire fraud and conspiracy to commit wire fraud, money laundering and conspiracy to commit money laundering, mail fraud and conspiracy to commit mail fraud, and destruction of records. The indictment also sought forfeiture of Wagner's personal residence and forty-five items of construction equipment involved in the scheme. The jury found Wagner guilty of the wire fraud and money laundering charges (counts 1-26) and acquitted Wagner of the destruction of records charge (count 32). Counts 27 through 31 were scheduled to be tried separately because those charges involved a different codefendant, Tom Walters. Wagner later pled guilty to conspiracy to commit mail fraud (count 27) in exchange for dismissal of four substantive counts of mail fraud (counts 28-31).

After the guilty verdict and signing of the plea agreement, Wagner and the Government stipulated that Wagner owed $1 million in restitution. The court accepted the stipulation and entered a judgment that included that amount in restitution. The Government also moved for a preliminary order of forfeiture on October 31, 2017, listing Wagner's home and forty-five items of construction equipment. Wagner did not contest the forfeitability of these assets; the motion stated that "A proposed Preliminary Order of Forfeiture is attached and has been agreed to by Claimant, Scott C. Wagner, through his counsel." The motion also indicated that Wagner and the Government were negotiating a settlement, which would involve the Government's accepting a cash payment from Wagner in lieu of forfeiture of the real and personal property listed in the motion. The district court granted the motion on November 1, 2017, and issued a preliminary order of forfeiture.

On November 3, 2017, Richard Kerger, who was Wagner's retained trial attorney, made what turned out to be an unauthorized settlement offer to the Government. The offer stated that Wagner would pay $1,423,958 in return for relinquishment of the forfeiture claims against the house and construction equipment. Kerger withdrew the offer over a month later on December 5, 2017, stating in an email to the Government's counsel that Wagner was only willing to pay $1,147,500 to settle the claims.

On February 2, 2018, Wagner entered into an agreement with the Government, whereby Wagner would pay $1,247,500 to settle the forfeiture claims on his house and construction equipment. Upon receiving the check from Wagner, the Government filed a motion for final order of forfeiture, which the court granted on February 23, 2018.

During the sentencing phase, the district court calculated Wagner's Sentencing Guidelines range as 63 to 78 months. The court ultimately sentenced Wagner to 75 months' imprisonment on each count, to be served concurrently, and three years of supervised release. Wagner did not appeal his judgment or any of the forfeiture orders.

In April 2018, Wagner filed a timely *pro se* motion to vacate under 28 U.S.C. § 2255. In his motion, he alleged that his retained counsel, Richard Kerger, provided ineffective assistance of counsel by failing to file a notice of appeal. Wagner alleged that he asked Kerger to file a notice of appeal after sentencing and that Kerger had agreed to do so. The United States responded to the motion and attached Kerger's affidavit. In the affidavit, Kerger stated that Wagner asked him to file a notice of appeal after the jury verdict but not after the sentencing. According to Kerger, he told Wagner that he would not prosecute the appeal, but referred Wagner to an appellate attorney, Ralph Cascarilla.

Kerger further asserted that after the jury verdict and before the sentencing hearing, he advised Wagner of the risks of filing an appeal. Those risks included the possibility that Wagner would lose the reduction of his base offense level for acceptance of responsibility. To preserve Wagner's eligibility for the reduction despite Wagner's having gone to trial, Kerger informed Wagner that he would have to make incriminating statements to the probation officer preparing his presentence report. Were Wagner to win on appeal and get a new trial, those statements would be admissible against him, making any such appeal "a waste of time." Kerger stated that after this conversation, Wagner "said he still wanted to appeal the sentence if it was excessive." Kerger swore that he never discussed the possibility of an appeal after Wagner's sentencing, thus contradicting Wagner's statement in his motion to vacate. Kerger also asserted that "[a]lthough I had told Mr. Wagner previously that he would need another lawyer to handle any appeal, he did

not ask me to locate one." Finally, Kerger stated that Wagner "never told me he did not want an appeal nor did he specifically tell me he agreed with my analysis."

Several months after filing his original motion to vacate, Wagner retained Kassem Dakhlallah, who is acting as his counsel on this appeal. Wagner's new counsel filed a supplemental motion to vacate, adding new claims that trial counsel performed ineffectively by (1) failing to cross-examine two witnesses concerning inconsistent testimony; (2) failing to contest or respond to the Government's motions for forfeiture; (3) making a settlement offer to the government regarding forfeited property without Wagner's consent; and (4) failing to advise Wagner of his right to contest the Government's forfeiture allegations.

In his supplemental motion to vacate, Wagner no longer asserted that he asked Kerger to file an appeal after the sentencing hearing. The supplemental motion focused exclusively on Wagner's express instruction to appeal after his trial and did not address Kerger's sworn statement that Wagner later modified this instruction. Accordingly, Wagner did not argue to the district court that his sentence was "excessive" as he understood that term in his conversation with Kerger.

The district court denied Wagner's motion without conducting an evidentiary hearing. In a three-page order, the district court adopted the Government's recitation of the facts and legal arguments with respect to Wagner's cross-examination and forfeiture arguments. The court conducted its own brief analysis with respect to Wagner's notice-of-appeal argument. The court found that Wagner's claim that he requested an appeal after his sentencing was contradicted by sworn statements from Kerger and from Wagner's wife; the latter averred in an affidavit that she heard Wagner ask Kerger to appeal soon after the return of the jury verdict. The district court noted that although Wagner gave an express instruction to appeal at the conclusion of his trial, he modified this instruction later on and "agreed that Kerger would file an appeal only if Wagner's

sentence was 'excessive.'" Because Wagner was given a sentence within the Guidelines range, the district court concluded that his sentence was not "excessive." Accordingly, the court held that Kerger had not failed to follow Wagner's express instruction to appeal.

Citing our unpublished decision in *Shelton v. United States*, 378 F. App'x 536, 539 (6th Cir. 2010), the district court also held that Kerger's advice to Wagner about the costs and benefits of an appeal satisfied his obligation to consult with his client as established in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). Wagner does not challenge this aspect of the district court's ruling. The district court denied a certificate of appealability for all of Wagner's claims.

Wagner appealed, and we granted a certificate of appealability on "whether trial counsel performed ineffectively by (1) failing to file a notice of appeal, and (2) failing to challenge the forfeiture proceedings against Wagner's wishes or inform Wagner of his right to challenge the forfeiture proceedings." *Wagner v. United States*, No. 19-3085, R. 6-2, at 5 (6th Cir. May 16, 2019) (unpublished order).

**II.**

Wagner argues both below and on appeal that he asked his attorney, Richard Kerger, to file a notice of appeal at the conclusion of his trial. *See* R. 202, PageID #2609; Appellant Br. at 9-10. He provides an affidavit from his wife that supports this account. Wagner contends Kerger's failure to follow his plain instruction to appeal was *per se* ineffective assistance of counsel under *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). *See* R. 202, PageID #2607, 2609; Appellant Br. at 9. This argument disregards undisputed evidence of later discussions Kerger had with Wagner during which Wagner asked Kerger to appeal only if his sentence was "excessive."

Wagner further contends that Kerger admitted in his affidavit to receiving an unqualified instruction to appeal immediately following the conclusion of the jury verdict. *See* R. 202, PageID

#2609; Appellant Br. at 9-10. Once again, however, this argument is irrelevant in light of Wagner's subsequent instruction to Kerger, which modified his original, unqualified instruction to appeal. Wagner also asserts that Kerger demonstrated knowledge of Wagner's desire to appeal by contacting an appellate attorney and discussing appellate strategy with Wagner. *See* R. 202, PageID #2610-2611; Appellant Br. at 12-13. But the argument that Kerger took preparations to appeal does not respond to the Government's argument that Wagner instructed Kerger to appeal only on the limited condition that he receive an "excessive" sentence. The district court properly relied on the Government's evidence to find that Kerger was no longer under an unconditional obligation to appeal.

Wagner's failure to address the Government's argument that he later modified his request to appeal is fatal to his claim. The onus is on the petitioner to prove that his lawyer was constitutionally ineffective by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Wagner has failed to meet his burden in this case. Wagner's supplemental motion filed with the district court completely neglected to address the Government's evidence demonstrating that Wagner's original, unqualified instruction to appeal was replaced by a qualified instruction to appeal only an "excessive" sentence. On appeal, Wagner continues to press the argument that Kerger failed to adhere to his original agreement with Wagner. *See* Appellant Br. at 10-11. Wagner has not provided any evidence—either to the district court or to us—showing that Kerger violated his superseding agreement with Wagner. There is accordingly no basis for reversing the district court's determination that Wagner's counsel was not ineffective in failing to file a notice of appeal.

It may be that, instead of disregarding the post-conviction pre-sentencing discussions that Kerger swore to, Wagner might have argued that in those discussions he communicated to Kerger

that he should file a notice of appeal.  But Wagner makes no such argument, and made no such argument below.  For instance, the argument could have been made that the district court erred in relying exclusively on the technical legal meaning of an "excessive" sentence in ascertaining what the post-verdict pre-sentencing understanding was between Wagner and Kerger.  But Wagner never made such an argument, despite ample opportunity both below and here, and we are not in a position to make it for him.  In particular, Wagner did not respond to the Government's argument—later adopted by the district court—that his sentence was not "excessive" because it fell within the U.S. Sentencing Guidelines range and, therefore, that Kerger was not ineffective for failing to file a notice of appeal.  A party forfeits arguments "not squarely presented to the district court."  *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 528 (6th Cir. 2014) (quoting *Dice Corp. v. Bold Techs.*, 556 F. App'x 378, 384 (6th Cir. 2014)).  Wagner forfeited any such argument regarding the meaning of "excessive" by not addressing it in either of his § 2255 motions to the district court.[1]

Despite this forfeiture, we could still review the district court's conduct in a § 2255 proceeding on the basis of plain error.  *See United States v. Frady*, 456 U.S. 152, 166 n.15 (1982) (citing Rule 12 of the Rules Governing § 2255 Proceedings).  But Wagner has not requested that we reverse on this basis.  Rather, his argument on appeal is substantially similar to the one he made below and thus he has not challenged the district court's ruling that he received a sentence that was not "excessive."[2]  *See* Appellant Br. at 8-13.

---

[1] Although Wagner requested an evidentiary hearing below, he has not argued for such a hearing on this appeal.

[2] Wagner's attorney finally raised an "excessive sentence" issue at oral argument.  This was too late, however, as issues raised for the first time at oral argument are considered forfeited on appeal.  *See United States v. Jackson*, 918 F.3d 467, 493 (6th Cir. 2019) (citing *United States v. Goldston*, 906 F.3d 390, 395 n.1 (6th Cir. 2018)).

It is true that we have discretion in "exceptional circumstances" to correct plain errors *sua sponte*. *See Silber v. United States*, 370 U.S. 717, 718 (1962) (per curiam); *accord United States v. Graham*, 275 F.3d 490, 521-22 (6th Cir. 2001). The circumstances here, however, are not exceptional. What Wagner and Kerger may in context reasonably have understood by the word "excessive" was a factual issue, not a legal one. In *United States v. Finch*, 998 F.2d 349, 355 (6th Cir. 1993), we declined to address an error not raised on appeal where, as here, the district court was confronted with a fact-intensive issue and "it is possible that the failure of the [losing party] to raise the issue [below] may have influenced the manner in which the evidence was developed." In addition, Wagner had numerous chances to make such an argument below and on appeal but failed to do so. Moreover, this is not a case in which *sua sponte* consideration of plain error is warranted by an intervening change in the law that invalidated the district court proceedings. *Compare United States v. Pugh*, 405 F.3d 390, 401-02 (6th Cir. 2005); *United States v. Trammel*, 404 F.3d 397, 401 (6th Cir. 2005); *United States v. Vaught*, 133 F. App'x 229, 238-39 (6th Cir. 2005); *Graham*, 275 F.3d at 521-22. Accordingly, *sua sponte* plain error review is not warranted in the present case.

## III.

Wagner brings a second claim under § 2255, alleging that his trial attorney was ineffective for failing to contest the Government's forfeiture claims or informing him that he had a right to challenge forfeiture.

## A.

As an initial matter, the Government does not argue that, because Wagner is not "claiming the right to be released" as required under § 2255, his forfeiture-related claim should be dismissed. *See United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995); *United States v. Bernard*, 351 F.3d

360, 361 (8th Cir. 2003) (collecting cases); *but see Weinberger v. United States*, 268 F.3d 346, 351 n.1 (6th Cir. 2001). Further, the Government expressly waived this issue at oral argument. We may accept this waiver and proceed because the limiting language is not jurisdictional.

Section 2255 provides that "[a] prisoner *in custody* under sentence of a court established by Act of Congress *claiming the right to be released* . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a) (emphasis added). The equivalent statute for state prisoners contains similar language: "a district court shall entertain an application for a writ of habeas corpus in behalf of a person *in custody* pursuant to the judgment of a State court *only on the ground that he is in custody* in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). These statutes establish two requirements relevant here: first, that the petitioner be "in custody," and second, that the petitioner be "claiming the right to be released,"—or in the § 2254 context, that he seeks a writ of habeas corpus "on the ground that he is in custody in violation of the Constitution" or federal law.

Congress has not indicated with sufficient clarity that § 2255's "claiming the right to be released" requirement is jurisdictional. There is no jurisdictional language to be found in § 2255(a). Each requirement in the statute is imposed as a limitation on the *movant*, not on the court's adjudicatory power: "A prisoner in custody . . . claiming the right to be released . . . *may move the court* . . . to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a) (emphasis added). The Supreme Court, in the context of a different habeas provision, explained that "[a] rule is jurisdictional 'if the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional.'" *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (internal brackets omitted) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006)). Without such a clear statement, "courts should treat the restriction as nonjurisdictional." *Id.* at 142 (quoting *Arbaugh*,

546 U.S. at 516). In determining whether there is a clear statement, the *Gonzalez* Court looked for "'clear' jurisdictional language." *Id.* For instance, the Court acknowledged the presence of jurisdictional language in 28 U.S.C. § 2253(c)(1), which reads "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals." *Id.* (quoting 28 U.S.C. § 2253(c)(1)). The absence of such jurisdictional language in surrounding provisions of a statute leads to a presumption that Congress intended those provisions to be nonjurisdictional. *Id.* at 143. *Gonzalez* thus supports the conclusion that the requirements in §§ 2254(a) and 2255(a) are not jurisdictional.

We recognize that the Second, Fifth, and Ninth Circuits have used language suggesting that a court lacks subject-matter jurisdiction over a prisoner's challenge to his non-custodial sentence under § 2254 or § 2255. *See Bailey v. Hill*, 599 F.3d 976, 984 (9th Cir. 2010) (Section 2254); *Kaminski v. United States*, 339 F.3d 84, 91 (2d Cir. 2003) (Section 2255); *United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999) (same). These cases, however, are not persuasive. First, they came down before the Supreme Court's decision in *Gonzalez*, which was the culmination of a successful effort by the Court to "'bring some discipline' to the use of the term 'jurisdictional.'" *Gonzalez*, 565 U.S. at 141 (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). Tellingly, the courts in *Kaminski* and *Bailey* do not employ a jurisdictional analysis along the lines suggested by *Gonzalez* and its precursor cases *Henderson* and *Arbaugh*, and the *Hatten* court provides no supporting discussion at all as it relates to jurisdiction.

Further, the absence of a jurisdictional analysis in these cases casts doubt on whether the issue of jurisdiction was ever raised or considered. Accordingly, the *Kaminski*, *Hatten*, and *Bailey* decisions appear implicitly to tether their jurisdictional holdings to the mandatory nature of the claiming release requirement. But "there is a distinction between a 'mandatory' provision and a

'jurisdictional' provision." *Allen v. Parker*, 542 F. App'x 435, 440 (6th Cir. 2013). The Supreme Court has "long 'rejected the notion that all mandatory prescriptions, however emphatic, are . . . properly typed jurisdictional.'" *Gonzalez*, 565 U.S. at 146 (quoting *Henderson*, 562 U.S. at 439). Consistent with this view, the Eleventh Circuit has observed that most courts denying challenges by prisoners to non-custodial sentences under § 2255 "have not couched their opinions in jurisdictional language." *Blaik v. United States*, 161 F.3d 1341, 1343 (11th Cir. 1998) (collecting cases). We therefore respectfully decline to follow the Second, Fifth, and Ninth Circuits on this issue.

It does not follow from the jurisdictional nature of the "in custody" requirement, *see Maleng v. Cook*, 490 U.S. 488, 494 (1989); *United States v. Osser*, 864 F.2d 1056, 1060 (3d Cir. 1988), that the "claiming the right to be released" requirement is jurisdictional. The requirement that a habeas petitioner be "in custody" originates from § 2241, which, in contrast to §§ 2254 and 2255, contains clear jurisdictional language.[3] Noticeably, however, there is no similar requirement in § 2241 that a petitioner *claim release* from custody. Section 2241(c)(1), for example, grants habeas jurisdiction over a petitioner "in custody under or by color of the authority of the United States." Consistent with this reading of § 2241's text, courts have allowed remedies under § 2241 that do not affect the validity or duration of a prisoner's sentence. A prisoner can, for instance,

---

[3] Title 28 U.S.C. § 2241 provides the general grant of habeas jurisdiction to federal courts and states in relevant part that "[t]he writ of habeas corpus shall not extend to a prisoner unless—

> (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
>
> (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
>
> (3) He is in custody in violation of the Constitution or laws or treaties of the United States; or
>
> (4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or
>
> (5) It is necessary to bring him into court to testify or for trial.

use § 2241 to challenge the "execution or manner in which the sentence is served." *Edwards v. Dewalt*, 681 F.3d 780, 784 (6th Cir. 2012) (quoting *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001)). This includes challenges to the location where a sentence is being served, *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991) (dictum), prison transfers, *Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000), or a prison's requirement that a prisoner make restitution payments while confined, *Fontanez v. O'Brien*, 807 F.3d 84, 87 (4th Cir. 2015). Section 2241 thus provides the requisite clear statement from Congress that being in custody is a jurisdictional limitation on habeas courts. There is no equivalent clear statement in § 2241 that courts lack jurisdiction over habeas petitions where the petitioner does not claim the right to be released.

The origin of § 2255 can be traced back to § 2241 and thus § 2241's language informs the meaning of § 2255. Section 2255, which was passed into law in 1948, requires a prisoner to file suit in the district in which he was sentenced and was enacted solely to alleviate the "'serious administrative problems' caused by the [previous] requirement that habeas petitions be brought in the district of incarceration, often far from where relevant records and witnesses were located." *McCarthan v. Dir. of Goodwill Indus. Suncoast*, 851 F.3d 1076, 1082 (11th Cir. 2017) (en banc) (quoting *United States v. Hayman*, 342 U.S. 205, 212 (1952)). As a result, the § 2255 remedy was not intended to be different in scope from the § 2241 remedy previously available. *See Sustache-Rivera v. United States*, 221 F.3d 8, 17 (1st Cir. 2000); *Kinder v. Purdy*, 222 F.3d 209, 214 (5th Cir. 2000). Thus, even assuming that the jurisdictional nature of the "in custody" requirement of § 2241 carried over to § 2255, the same cannot be said of the "claiming the right to be released" language appearing only in § 2255. It follows that the Government could waive the restrictive nature of this language in the present case.

**B.**

Wagner's forfeiture-based ineffective assistance claim fails, however, as Wagner is unable to show either deficient performance or prejudice as required by *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). Wagner first argues that Kerger was ineffective by neglecting to tell Wagner that he had the right to contest the Government's forfeiture claims. In support of this argument, Wagner points to an affidavit from his son, Jordan Wagner, who attended a meeting in October 2017 with his father and Kerger where the three discussed options regarding forfeiture. Jordan Wagner avers that "Kerger did not advise [Wagner] of the option to contest the forfeiture and make the Government prove that the forfeited property was paid from proceeds traceable to criminal activity."

As the Government correctly points out, however, there is contrary evidence showing that Kerger did inform Wagner of the possibility of contesting forfeiture. Elsewhere in his affidavit, Jordan Wagner states that "[d]uring the meeting, Mr. Kerger *proposed the option of fighting the forfeiture of the equipment* on the basis that it was owned by Construction Equipment and Supply, Ltd., ('CES'), not by Scott Wagner, and CES was not convicted of a crime." Thus, by October 2017—before the Government had filed a motion for preliminary order of forfeiture—Wagner was aware of the possibility of contesting certain aspects of the forfeiture proceeding. Accordingly, it was not clearly erroneous for the district court to conclude that Wagner knew of his ability to challenge the Government's forfeiture allegations.

Wagner secondly criticizes Kerger for failing to respond to either of the Government's forfeiture motions. But there is evidence that Kerger's failure to respond to the preliminary forfeiture motion was the result of Wagner's informed choice not to contest the motion. According to Jordan Wagner's affidavit, Scott Wagner discussed with Kerger the possibility of fighting the

forfeiture allegations but also told Kerger that he would "rather pay cash than allow the government to take the family residence." Accordingly, the record supports the reasonable inference that Wagner settled the forfeiture allegations in order to keep his family home and not because of Kerger's deficient legal representation. Kerger likewise cannot be faulted for not responding to the Government's motion for final order of forfeiture. By the time the Government filed that motion on February 21, 2018, Wagner had already signed a settlement agreement with terms identical to those in the Government's motion, thereby eliminating the need to contest it. Accordingly, Wagner has failed to prove that his attorney performed deficiently by not contesting the Government's forfeiture allegations.

Wagner also cannot demonstrate that he was prejudiced by not challenging the forfeiture allegations. Wagner first contends that he would have been better off challenging the forfeiture allegations because "there is a colorable argument that no nexus can be drawn between the defendant's criminal conduct and much of Wagner's forfeited property." According to Wagner, his legitimate earnings far outstrip the $1,937,500 he received through his fraudulent schemes and, as a consequence, "the Government could not prove that the forfeited property was derived from the fraud, and not from the millions of dollars Wagner made in legitimate business dealings."

This argument addresses why Wagner's property is not forfeitable under the civil forfeiture statute. That statute permits forfeiture of property "which constitutes or is derived from" illegal proceeds. *See* 18 U.S.C. § 981(a)(1)(C). But the Government sought forfeiture of Wagner's property under the civil *and* criminal forfeiture statutes. Property is subject to criminal forfeiture if it is "involved in" or "traceable to" certain illegal activity, including mail fraud, wire fraud, and money laundering. *See* 18 U.S.C. § 982(a)(1). Wagner does not even attempt to show that his

-15-

assets were not involved in or traceable to his illegal schemes. He thus has not demonstrated that he was prejudiced by his counsel's asserted failure to contest the forfeiture allegations against him.

Wagner makes an additional prejudice argument: that but for his attorney's asserted failure to contest the forfeiture allegations, Wagner would have paid a lower settlement for the forfeited property. Wagner asserts that had Kerger contested forfeiture, he "might have worked out a deal for Wagner to pay the $1 Million in restitution directly, without forfeiture of the family home, thus saving Wagner $247,500." But restitution and forfeiture are distinct remedies, and a district court may order both when appropriate. *United States v. Schwartz*, 503 F. App'x 443, 449 (6th Cir. 2012) (collecting cases). Thus, Wagner's payment of restitution did not prohibit the Government from also seeking forfeiture of assets involved in or derived from his illegal scheme. Moreover, the record does not reflect any attempt by the Government to negotiate restitution and forfeiture together. There were separate settlement agreements for restitution and forfeiture, and each was signed at different times. Accordingly, any payment in lieu of forfeiture would have been on top of Wagner's $1 million restitution obligation.

Wagner's final argument is that Kerger's unauthorized settlement offer to the Government "severely prejudiced Wagner in negotiations from that point on." Wagner's only evidence for this claim is his son's affidavit, which states that "Kerger then told us that the Government was going to take our family home because they were upset that we retracted on the settlement." Put simply, the record is devoid of any evidence that the Government punished Wagner for Kerger's misstep. Jordan Wagner's fear that the Government would, out of retaliation for the retracted settlement offer, "take the family home," turned out to be unfounded. Furthermore, Wagner eventually settled the forfeiture allegations for $1,247,500, over $175,000 less than the amount Kerger originally

offered. Thus, even assuming Kerger performed deficiently by tendering an unauthorized settlement offer, Wagner has not met his burden of showing that he was prejudiced.

**IV.**

The judgment of the district court is affirmed.